**UNITED STATES of America,**

v.

**Thomas PITERA, Defendant.**

**No. CR 90–0424 (RR).**

United States District Court, E.D. New York.

May 26, 1992.

**550**

Andrew J. Maloney, U.S. Atty., E.D. New York, Brooklyn, N.Y. by David W. Shapiro, Linda B. Lakhdir, Asst. U.S. Attys., for U.S.

Mathew J. Mari, New York City, Ruhnke & Barrett, West Orange, N.J. by David A. Ruhnke, Cheryl Hamer Mackell, New York City, for Thomas Pitera.

Ass'n of the Bar of City of New York, New York State Defenders Ass'n, Nat. Ass'n of Criminal Defense Lawyers, New York State Ass'n of Criminal Defense Lawyers, Nat. Legal Aid and Defender Ass'n, and New York Criminal Bar Ass'n, Cravath, Swaine & Moore, New York City by Paul M. Dodyk, Patricia Perlmutter, for amici curiae.

## MEMORANDUM AND ORDER

RAGGI, District Judge:

Thomas Pitera stands before the court charged in a twenty count indictment with racketeering, drug trafficking, and various firearms violations. Count Three of the indictment accuses Mr. Pitera of killing two persons, Richard Leone and Solomon Stern, while engaging in or working in furtherance of a continuing criminal enterprise. Such conduct carries a possible sentence of death. 21 U.S.C. § 848(e)(1)(A). The government has served notice of its intent to seek the death penalty if Mr. Pitera is found guilty of Count Three.[1]

Mr. Pitera challenges the constitutionality of § 848(e)(1)(A)'s death penalty provision. Joining in the attack as *amici curiae* are the Association of the Bar of the City of New York, the New York State Defenders Association, the National Association of Criminal Defense Lawyers, the New York State Association of Criminal Defense Lawyers, the National Legal Aid and Defender Association, and the New York Criminal Bar Association. Defendant and/or *amici* advance the following arguments:

I. any form of capital punishment violates the eighth amendment's prohibition of cruel and unusual punishment;

II. the particular federal statute at issue fails adequately to ensure that the death penalty will not be imposed in an arbitrary and capricious manner in that:

A. the capital crime itself is both vague and irrational,

---

**1.** This case is the first in the Second Circuit in which the United States seeks the death penalty pursuant to § 848(e)(1). It is one of five such cases brought by the Justice Department since 1989.

(1) In *United States v. Cooper,* separate juries sitting in the Northern District of Illinois found defendants Alexander Cooper and Anthony Davis guilty of violating 21 U.S.C. § 848(e)(1)(A) but declined to impose the death penalty. The defendants are instead each serving terms of life imprisonment. The trial court's opinion upholding the constitutionality of the death penalty statute is reported at 754 F.Supp. 617 (N.D.Ill. 1990).

(2) In *United States v. Chandler,* 90 CR 266, a jury in the Northern District of Alabama found defendant guilty of violating 21 U.S.C. § 848(e)(1)(A) and recommended the death penalty. The court rejected defendant's constitutional challenge without published opinion, re-lying on *United States v. Cooper, supra.* This conviction and sentence are presently on appeal.

(3) In *United States v. Villarreal,* 91 CR 004, a jury sitting in the Eastern District of Texas found defendants Baldemar Villarreal and Reynaldo Villarreal guilty of violating 21 U.S.C. § 848(e)(1)(B). It was not persuaded, however, of the presence of certain statutory aggravating factors required to impose the death penalty. Accordingly, Baldemar Villarreal is now serving a term of life imprisonment while Reynaldo Villarreal is serving a term of 30 years imprisonment. Constitutional challenges were denied without opinion.

(4) Most recently, the trial of *United States v. Pretlow,* in the District of New Jersey, ended without verdict as a result of defendant's suicide. The trial court's opinion upholding the constitutionality of § 848(e)(1)(A) is reported at 779 F.Supp. 758 (D.N.J.1991).

B. the sentencing scheme relies on duplicative and vague statutory aggravating factors,

C. the sentencing scheme permits reliance on unlimited non-statutory aggravating factors,

D. the sentencing scheme impermissibly limits consideration of mitigating factors,

E. the sentencing hearing is not governed by the Federal Rules of Evidence, and

F. meaningful appellate review is not ensured;

III. Mr. Pitera was singled out for arbitrary and vindicative prosecution; and

IV. Congress's failure to provide a means of execution is inevitably cruel and unusual and violative of the *ex post facto* clause.

Defendant asks the court to address these constitutionality challenges before trial since jury selection as well as defense trial strategy may differ considerably in a capital versus a non-capital case. *See, e.g.,* Fed.R.Crim.P. 24(b) (providing twenty peremptory challenges per side if a defendant is charged with a crime punishable by death); 18 U.S.C. § 3432 (capital charge requires disclosure to defendant of a list of veniremen and place of abode three days before commencement of trial). This court has therefore carefully considered all arguments advanced by the parties and *amici.* It rejects the constitutional attack on 21 U.S.C. § 848(e)(1)(A). The parties were advised orally of this ruling on April 27, 1992. This memorandum details the reasons for the court's decision.

### Statutory Background: The Anti–Drug Abuse Act of 1988

The Anti–Drug Abuse Act of 1988 makes it a capital offense intentionally to kill another person in connection with the commission of serious federal drug crimes. Specifically, 21 U.S.C. § 848(e)(1)(A) provides:

[A]ny person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1) who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years and which may be up to life imprisonment, or may be sentenced to death....[2]

The Act details procedures to be followed before a defendant can be executed. Initially, the government must serve notice "a reasonable time before trial" of its intent to seek the death penalty. 21 U.S.C. § 848(h)(1). If a defendant is found guilty of violating § 848(e)(1)(A), a separate sentencing hearing must be conducted, generally before the same jury that determined guilt. 21 U.S.C. § 848(i)(1)(A). The purpose of the hearing is to permit consideration of any "aggravating" and "mitigating" factors relevant to whether or not the defendant should be sentenced to death. 21 U.S.C. § 841(j). The information adduced need not conform to the Federal Rules of Evidence, so long as the court is convinced that its "probative value is [not] substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." 21 U.S.C. § 848(j).

The process by which a jury is to consider sentencing factors is specific. Preliminarily, the government must prove beyond a reasonable doubt and to the unanimous satisfaction of the jury at least two of the aggravating factors expressly set forth in the statute (hereinafter referred to as "statutory aggravating factors"). 21 U.S.C. § 848(j) and (k). Moreover, it must advise the defendant a reasonable time before trial of which statutory aggravating factors it intends to prove. 21 U.S.C. § 848(h)(1). One of these must be from among the four listed in § 848(h)(1). The

---

**2.** The statute provides the same possible penalties for an individual who, in the course of committing certain drug offenses, intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of a law enforcement officer. 21 U.S.C. § 848(e)(1)(B). That section is not at issue in this case.

other must be from among those listed in § 848(n)(2)–(12). Absent proof of these statutory aggravating factors, a jury cannot vote to impose the death penalty. 21 U.S.C. § 848(k).

If a jury is satisfied that at least two such statutory aggravating factors have been proved, it may then consider any mitigating factors established by the defendant, whether from among those listed in § 848(m) or not, and any other aggravating factors of which the government gives notice in advance of trial (hereinafter referred to as "non-statutory aggravating factors"). 21 U.S.C. § 848(h)(1)(B), (j), and (k). Although non-statutory aggravating factors must be proved to the jury's unanimous satisfaction beyond a reasonable doubt, mitigating factors need only be established by a preponderance of the evidence. Moreover, any juror persuaded of a mitigating factors may consider it in reaching a sentencing decision; unanimity is not required. 21 U.S.C. § 848(j) and (k).

A jury that finds the required statutory aggravating factors proved must consider whether these factors, along with any non-statutory aggravating ones, so outweigh any mitigating factors as to justify a sentence of death in the discrete case. 21 U.S.C. § 848(k). Even absent any mitigating factors, a jury must still be unanimously satisfied beyond a reasonable doubt that the proved aggravating factors are themselves sufficient to justify capital punishment before a sentence of death can be imposed. Id.

Invidious factors cannot influence a jury's determination as to the death penalty. Indeed, each juror must sign a certificate attesting that neither the defendant's nor the victim's "race, color, religious beliefs, national origin, or sex" played any part in the deliberations. 21 U.S.C. § 848(o)(1).

Although a jury cannot vote for the death penalty absent the required findings and certifications just detailed, a jury is *never* required to impose a death sentence even if it finds sufficient grounds to do so under the applicable law. Indeed, a court must specifically so instruct the jury. 21 U.S.C. § 848(k).

The statute labels a jury's finding in favor of the death penalty a "recommendation." 21 U.S.C. § 848(*l*). In fact, it is determinative, for upon such a "recommendation" the trial court "shall sentence the defendant to death." *Id.* Absent a recommendation of death, the court must sentence a defendant to a minimum of 20 years and a maximum of life imprisonment. *Id.;* 21 U.S.C. § 848(e)(1)(A).

Appellate review of a death sentence is expressly provided by the law. 21 U.S.C. § 848(q)(1). Such appeal may be consolidated with a challenge to the judgment of conviction, and the case is to be given priority on the appellate docket. *Id.*

## Discussion

I. The Death Penalty as Cruel and Unusual Punishment

■ Mr. Pitera contends that the death penalty is, under all circumstances, cruel and unusual punishment violative of the eighth amendment. He concedes, however, that this argument has been rejected by all current members of the Supreme Court who have had occasion to consider the issue. *See, e.g., Gregg v. Georgia,* 428 U.S. 153, 178, 96 S.Ct. 2909, 2927, 49 L.Ed.2d 859 (1976) (opinion of Stewart, Powell, and Stevens, JJ.) (citing to two centuries of case law upholding the constitutionality of capital punishment); *accord McCleskey v. Kemp,* 481 U.S. 279, 300–01, 107 S.Ct. 1756, 1771–72, 95 L.Ed.2d 262 (1987). Moreover, he cites no objective indicia of any change in public opinion about this punishment that might warrant reconsideration of its constitutionality. *See Gregg v. Georgia,* 428 U.S. at 173, 96 S.Ct. at 2925 (opinion of Stewart, Powell, and Stevens, JJ.); *Weems v. United States,* 217 U.S. 349, 378, 30 S.Ct. 544, 553, 54 L.Ed. 793 (1910). This court is, therefore, compelled to follow controlling case law and to reject the broad constitutional attack on the death penalty. *See United States v. Pretlow,* 779 F.Supp. at 777–78 (rejecting similar challenge to § 848(e)(1)(A)).

Instead, the court considers the specific challenges made to the capital statute here at issue. In so doing, it is mindful of Justice Holmes's admonition that constitutionality challenges to an act of Congress engage a court in "the gravest and most delicate duty" of the judicial branch. *See Blodgett v. Holden,* 275 U.S. 142, 148, 48 S.Ct. 105, 107, 72 L.Ed. 206 (1927). A due respect both for the magnitude of the task and for the independence of Congress, which presumably "legislates in the light of constitutional limitations," makes it appropriate to construe a challenged statute so as to avoid a conflict with the Constitution if reasonably possible. *Rust v. Sullivan,* — U.S. —, —, 111 S.Ct. 1759, 1771, 114 L.Ed.2d 233 (1991); *Communication Workers v. Beck,* 487 U.S. 735, 762, 108 S.Ct. 2641, 2657, 101 L.Ed.2d 634 (1988); *Edward J. Debartolo Corp. v. Florida Gulf Coast Bldg. and Const. Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988). These principles guide the court's analysis.

II. Arbitrary and Capricious Sentencing

■ The majority of the arguments advanced by defendant and *amici* contend that the statute at issue fails to ensure that the death penalty is imposed in a consistently reasoned manner. The single most important principle to be derived from the Supreme Court's recent death penalty jurisprudence, beginning with the various opinions in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), is that capital punishment is unconstitutionally cruel and unusual if it is imposed arbitrarily or capriciously. Thus, statutes must "genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Zant v. Stephens,* 462 U.S. 862, 877, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235 (1983). "[R]ational criteria" must be articulated "that narrow the decisionmaker's judgment as to whether the circumstances of a particular defendant's case" meet the "threshold below which the death penalty cannot be imposed." *Payne v. Tennessee,* — U.S.

—, —, 111 S.Ct. 2597, 2608, 115 L.Ed.2d 720 (1991) (quoting *McCleskey v. Kemp,* 481 U.S. at 305, 107 S.Ct. at 1774). Moreover, when, as in this case, a jury generally inexperienced in sentencing decisions is entrusted with "so grave [a] determination" as "whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Gregg v. Georgia,* 428 U.S. at 189, 96 S.Ct. at 2932 (opinion of Stewart, Powell, and Stevens, JJ.).

The means by which sentencing discretion can be narrowed and directed are varied. *See id.* at 195, 96 S.Ct. at 2935 (opinion of Stewart, Powell, and Stevens, JJ.). For example, a legislature can limit the types of murders for which capital punishment may be imposed. *See Lowenfield v. Phelps,* 484 U.S. 231, 244–45, 108 S.Ct. 546, 554–55, 98 L.Ed.2d 568 (1988). Alternatively, it can require proof of specific aggravating factors. *Id.* In this case, Congress appears to have done both: limiting the type of homicide for which the death penalty can be imposed to intentional murders committed in relation to a serious drug crime, and providing for specific aggravating factors that must be found before a sentence of death can be considered. *See United States v. Pretlow,* 779 F.Supp. at 772. Nevertheless, Mr. Pitera and *amici* contend that the statutory scheme is constitutionally inadequate. The court addresses in turn the particular cited deficiencies.

A. *Vagueness of the Crime*

*Amici* submit that the crime outlined in 21 U.S.C. § 848(e)(1)(A) is unconstitutionally vague. Specifically, they argue that the statute, in failing to specify the relationship to be proved between the defendant and the killing, between the enterprise and the killing, and between the defendant and the enterprise, risks arbitrary imposition of the death penalty. *Amici* further suggest that the statute violates due process in singling out certain drug-related murders for capital punishment when other equally or more heinous murders are not so punished. Neither argument has merit.

### 1. Eighth Amendment Vagueness

Generally, a vagueness challenge to a criminal statute invokes due process and focuses on the adequacy of notice to a *defendant* that certain conduct is prohibited. *See, e.g., Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). An eighth amendment vagueness challenge to a capital punishment statute has a different focus. The critical inquiry is whether the statute so poorly informs the *jury* as to what it "must find to impose the death penalty" that there is a risk that it is left "with the kind of open-ended discretion that was held invalid in *Furman v. Georgia." See Maynard v. Cartwright,* 486 U.S. 356, 361–62, 108 S.Ct. 1853, 1857–58, 100 L.Ed.2d 372 (1988) (citations omitted).

■ This case presents no such risk. The statute plainly states the relationship that must be established between a defendant and the charged murder: a defendant must have himself "intentionally kill[ed] the victim or he must have "counsel[ed], command[ed], induce[d], procure[d], or cause[d] the intentional killing." The latter clause, far from being ambiguous, as *amici* argue, parallels 18 U.S.C. § 2 and states principles on which juries are routinely instructed. In any event, the court understands the government's position to be that Mr. Pitera himself committed the two murders charged in Count Three. Thus, no jury confusion about his alleged involvement will arise.

■ The court further rejects *amici*'s suggestion that § 848(e)(1)(A) is fatally vague in failing to define the relationship that must be proved between a defendant's efforts on behalf of a continuing criminal enterprise and the alleged killing. A common sense reading of the statute supports the conclusion that a defendant faces federal prosecution only for homicidal acts committed "[while he was] engaging in or working in furtherance of a continuing criminal enterprise...." *Amici*'s speculation that the statute would permit federal prosecution of a drug kingpin who killed his spouse in a domestic dispute unrelated to his drug dealing is not only fanciful, it is jurisdictionally suspect. As between two possible interpretations of a statute, a court is, quite simply, obliged to adopt that which is not constitutionally defective. *See Rust v. Sullivan, supra.* The government, moreover, concedes that it must prove a relationship between the murders alleged and Mr. Pitera's involvement in the charged enterprise. The court understands this to be akin to that "vertical" relationship that must be proved between predicate acts and enterprises in racketeering cases. *See, e.g., United States v. Minicone,* 960 F.2d 1099 (2d Cir.1992), *reh'g granted in part, denied in part,* 1992 WL 15269 (1992). It will charge the jury accordingly.

■ Finally, the court finds no impermissible vagueness in the statute's description of the involvement a defendant must have in the charged enterprise. The government must prove that defendant was "engaging in or working in furtherance of a continuing criminal enterprise." How one "engages in" a continuing criminal enterprise is expressly defined in § 848(c). Moreover, courts routinely consider whether a defendant's actions are "in furtherance" of other criminal activity when applying Fed.R.Evid. 801(d)(2)(E) (co-conspirator hearsay exception). *See United States v. Cooper,* 754 F.Supp. at 627 (rejecting vagueness challenge to this aspect of § 848(e)(1)(A)).

*Amici* contend that "working in furtherance of a continuing criminal enterprise" can mean aiding and abetting it. They note that the Second Circuit has rejected aiding and abetting as a basis for finding a defendant guilty of violating 21 U.S.C. § 848(a) and (b). *See United States v. Amen,* 831 F.2d 373, 381–82 (2d Cir.1987), *cert. denied,* 485 U.S. 1021, 108 S.Ct. 1573, 99 L.Ed.2d 889 (1988); *cf. United States v. Pino–Perez,* 870 F.2d 1230 (7th Cir.) (en banc), *cert. denied,* 493 U.S. 901, 110 S.Ct. 260, 107 L.Ed.2d 209 (1989) (person supervised by drug kingpin cannot be guilty as aider and abettor of § 848(a) charge; but person not under kingpin's supervision who aids and abets the enterprise may be guilty pursuant to 18 U.S.C. § 2). This argument ignores the different concerns addressed

by § 848(a) and (b) on the one hand, and § 848(e)(1)(A) on the other. The former sections focus on individuals who head significant continuing drug enterprises. Section 848(e)(1)(A) focuses on individuals who commit murders in connection with the most serious drug crimes, specifically, in connection with continuing drug enterprises or in connection with the importation or distribution of significant quantities of drugs. While, as the Second Circuit noted in *Amen*, there is something illogical about convicting an aider and abettor for criminal conduct that focuses directly on the leadership role a defendant plays in a continuing criminal enterprise, that incongruity is not present in Congress's express decision to punish severely anyone who actually kills or who counsels, commands, induces, procures, or causes the intentional killing of a human being in connection with large-scale drug trafficking.

In any event, this case does not require the court to resolve the scope of a defendant's liability under § 848(e)(1)(A) for homicides committed while "working in furtherance of a continuing criminal enterprise." The government here contends that Mr. Pitera did, indeed, head the drug enterprise. In short, this case will be presented to the jury on the theory that Mr. Pitera committed the charged homicides while "engaging in" a continuing criminal enterprise. Proper instructions pursuant to § 848(c) will ensure that the jury understands this concept.

### 2. Due Process/Equal Protection

■ *Amici* further argue that § 848(e)(1)(A) violates the equal protection guarantee implicit in the due process clause of the fifth amendment by irrationally singling out for possible execution a class of persons whose homicidal conduct may be no more, and possibly less, serious than that engaged in by others.

A party raising an equal protection challenge to a criminal statute proscribing conduct that does not implicate a fundamental right bears a heavy burden. At issue is not "whether the legislature made a correct judgment, but only whether it made a rational one." *United States v. Richards*, 737 F.2d 1307, 1310 (4th Cir.1984); *United States v. Toner*, 728 F.2d 115, 128 (2d Cir.1984). Particularly when a challenge is to the punishment chosen for a given crime, courts must be mindful that " 'these are peculiarly questions of legislative policy.' " *Gregg v. Georgia*, 428 U.S. at 176, 96 S.Ct. at 2926 (quoting *Gore v. United States*, 357 U.S. 386, 393, 78 S.Ct. 1280, 1284, 2 L.Ed.2d 1405 (1958)) (opinion of Stewart, Powell, and Stevens, JJ.).

In this case, the choice Congress made is rational. Drug trafficking is recognized as "one of the greatest problems affecting the health and welfare of our population." *Treasury Employees v. Von Raab*, 489 U.S. 656, 668, 109 S.Ct. 1384, 1392, 103 L.Ed.2d 685 (1989). To address the concern, Congress has already provided for a potential sentence of life imprisonment for large scale traffickers. *See* 21 U.S.C. §§ 841(b), 848(a) and (b), 960(b). The Supreme Court has rejected the argument that such a severe sentence is cruel and unusual. *See Harmelin v. Michigan*, — U.S. —, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (upholding state sentence of mandatory life imprisonment for person trafficking in large amount of cocaine). One of the most troubling aspects of drug trafficking is, of course, the frequency with which it spawns crimes of violence, particularly murder. *See id.* at —, 111 S.Ct. at 2706 (Kennedy, J., concurring) (citing to studies linking drug trafficking to crimes of violence); *see also United States v. Crespo*, 834 F.2d 267, 271 (2d Cir.1987) (recognizing firearms as tools of the drug trade), *cert. denied*, 485 U.S. 1007, 108 S.Ct. 1471, 99 L.Ed.2d 700 (1988). In this context, Congress could reasonably have concluded that, when the risk of drug-related violence translates into the reality of an intentional murder, the death penalty is an appropriate sanction.

*Amici* are correct that drug-related violence is widespread, and not limited to large traffickers. Congress, however, may attack problems one step at a time. *See Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976); *United States v. Holland*, 810 F.2d 1215,

1219 (D.C.Cir.) (rejecting equal protection challenge to statute prohibiting drug trafficking within 1000 feet of school), *cert. denied,* 481 U.S. 1057, 107 S.Ct. 2199, 95 L.Ed.2d 854 (1987); *United States v. Agilar,* 779 F.2d 123, 126 (2d Cir.1985) (Congress acted rationally in increasing penalties for drug trafficking near schools "in hope of providing further deterrence, whether or not such success is thereby achieved"), *cert. denied,* 475 U.S. 1068, 106 S.Ct. 1385, 89 L.Ed.2d 609 (1986). Congress could reasonably have concluded that the penalty of death was so severe that it should only apply to those whose homicidal acts occurred in the context of the sort of large-scale drug trafficking already punishable by life imprisonment.

Insofar as *amici* strain to read the statute to cover defendants peripherally linked to the drug enterprise who only aid in the commission of a homicide, this court need not address such hypotheses. As already noted, Thomas Pitera is alleged to have headed the significant drug enterprise charged in the indictment. He is alleged to have personally committed the homicides at issue. His prosecution for such conduct pursuant to § 848(e)(1)(A) does not violate equal protection.

### B. *Statutory Aggravating Factors*

The government has advised Mr. Pitera that, if he is convicted of Count Three, it will seek to prove three statutory aggravating factors.[3] To satisfy its requirement under § 848(n)(1), it expects to prove that Mr. Pitera "intentionally killed Richard Leone and Solomon Stern." 21 U.S.C. § 848(n)(1)(A). To satisfy its requirement under § 848(n)(2)–(12), the government expects to prove that "defendant committed [the Leone/Stern murders] after substantial planning and premeditation," 21 U.S.C. § 848(n)(8), and that he committed these murders "in an especially heinous, cruel, or depraved manner in that [they] involved

torture or serious physical abuse to the victims," 21 U.S.C. § 848(n)(12).

Mr. Pitera argues that the "intentional killing" factor is merely duplicative of an element of the charged crime, and thus serves no real narrowing function. *Amici* join in this argument and contend that the same defect pertains to the "heinous, cruel or depraved ..." factor. Mr. Pitera challenges the latter factor as too vague to permit rational narrowing.[4]

#### 1. Intentional Killing

■ This court agrees that the "intentional killing" factor stated in § 848(n)(1)(A) mirrors the *mens rea* element of the charged crime. Defendant's suggestion that this duplication mandates a finding of unconstitutionality misperceives the purpose of statutory aggravating factors in a capital sentencing scheme. In *Lowenfield v. Phelps, supra,* the court explained that "[t]he use of 'aggravating circumstances' is not an end in itself, but a means of genuinely narrowing the class of death eligible persons and thereby channeling the jury's discretion." 484 U.S. at 244, 108 S.Ct. at 554. In that case, the only aggravating factor proved, defendant's specific intent to kill or inflict great bodily harm upon more than one person, also duplicated an element of the charged homicide. Because the element itself narrowed the class of murderers that could be sentenced to death, the Court upheld imposition of the death penalty, noting that such narrowing could be achieved "by jury findings at either the sentencing phase of the trial or the guilt phase." *Id.* at 245, 108 S.Ct. at 554; *accord Bertolotti v. Dugger,* 883 F.2d 1503, 1527 (11th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3296, 111 L.Ed.2d 804 (1990).

As with the statute in *Lowenfield,* § 848(e)(1)(A) significantly narrows the class of murderers eligible for the death

---

**3.** The government's motion to amend its death penalty notice to permit treatment of certain previously identified non-statutory aggravating factors as statutory aggravating factors is denied for reasons stated in a separate memorandum and order filed today.

**4.** No challenge is raised to the premeditation and planning factor. 21 U.S.C. § 848(n)(8). *See United States v. Cooper,* 754 F.Supp. at 623 (rejecting argument that this factor was vague and duplicative of the intent elements of the underlying crime).

penalty at the guilt phase. A jury must be persuaded that a defendant intentionally committed homicide and that he did so in connection with large-scale drug trafficking. *United States v. Pretlow,* 779 F.Supp. at 772 (applying *Lowenfield* to identical challenge here at issue); *United States v. Cooper,* 754 F.Supp. at 622 (same). Moreover, Congress requires the finding of at least one other aggravating factor drawn from the list in § 848(n)(2)–(12) before the death penalty can be considered. This further defines and limits the class of persons eligible for capital punishment. *United States v. Pretlow, supra; United States v. Cooper, supra.*

Defendant nevertheless seeks to distinguish this case from *Lowenfield* because § 848(k) requires juries to weigh aggravating and mitigating factors, whereas such weighing was not an aspect of the statute at issue in *Lowenfield.* The difference between "weighing" and "non-weighing" capital statutes involves more than "semantics." *See Stringer v. Black,* — U.S. —, —, 112 S.Ct. 1130, 1137, 117 L.Ed.2d 367 (1992). But the difference goes not so much to narrowing the capital class as it does to guiding the jury's individualized sentencing determination. Thus, in *Stringer,* the Supreme Court held that jury consideration of an unconstitutionally vague aggravating factor was particularly problematic under a weighing statute because "it creates the risk that the jury will treat the defendant as more deserving of the death penalty than he might otherwise be by relying upon the existence of an illusory circumstance." *Id.* 112 S.Ct. at 1139.

Mr. Pitera's challenge to § 848(n)(1)(A), however, is not vagueness. *See id.* (distinguishing *Lowenfield* as not involving a vague factor). Indeed, the Supreme Court has expressly held that a "highly culpable mental state ... may be taken into account in making a capital sentencing judgment." *See generally Tison v. Arizona,* 481 U.S. 137, 157–58, 107 S.Ct. 1676, 1687–88, 95 L.Ed.2d 127 (1987) (even reckless disregard for human life can support imposition of death sentence). Mr. Pitera's complaint is simply that the factor is duplicative. A duplicative factor, unlike a vague one, does not risk the injection of an "illusory circumstance" into the sentencing process.

Defendant's real complaint is that a duplicative factor unfairly tips the sentencing balance by permitting the government to argue something in aggravation that really adds nothing new to the crime of conviction. This concern is easily assuaged by an instruction telling the jury that § 848(e)(1)(A) duplicates an element of the crime, and stressing the importance of the quality of the information adduced at the sentencing hearing rather than its quantity. The jury will, of course, also be instructed that it cannot recommend the death penalty unless it finds the aggravating factors to outweigh—in terms of severity not raw number—any mitigating factors. It will be told that even in the absence of any mitigating factors, the death penalty cannot be imposed unless the aggravating factors are themselves serious enough to warrant capital punishment. Finally, it will be told that it is never required to recommend a defendant's execution. The court is satisfied that these instructions are sufficient to safeguard against imbalance at the sentencing hearing. *See United States v. Pretlow,* 779 F.Supp. at 773.

2. **Especially Heinous, Cruel or Depraved Manner Involving Torture or Serious Physical Abuse to the Victim**

■ Defendant argues that the statutory factor permitting consideration of whether a defendant committed murder in "an especially heinous, cruel or depraved manner in that it involved torture or serious physical abuse to the victim" is too vague to constitute a real narrowing of the class of persons subject to the death penalty. The court must decide whether the provision adequately informs a jury as to what it must find to impose the death penalty or whether it invites the exercise of open-ended discretion. *See Maynard v. Cartwright,* 486 U.S. at 361–62, 108 S.Ct. at 1857–58.

By itself, the term "especially heinous, cruel or depraved," is too vague to narrow

a jury's discretion in the manner required by the Constitution. *See id.* at 362–63, 108 S.Ct. at 1858–59; *Godfrey v. Georgia*, 446 U.S. 420, 428–29, 100 S.Ct. 1759, 1764–65, 64 L.Ed.2d 398 (1980). Its modification in § 848(n)(12) by the phrase "in that it involved torture or serious physical abuse to the victim" does, however, provide sufficient specificity to withstand challenge.[5] *See United States v. Pretlow*, 779 F.Supp. at 773 (rejecting similar challenge to § 848(n)(12)); *United States v. Cooper*, 754 F.Supp. at 623 (same).

The conclusion derives directly from the Supreme Court's "expressed approval" of a definition that would limit an " 'especially heinous, atrocious, or cruel' aggravating circumstance to murders involving 'some kind of torture or physical abuse.' " *Walton v. Arizona*, 497 U.S. 639, ——, 110 S.Ct. 3047, 3058, 111 L.Ed.2d 511 (1990) (quoting *Maynard v. Cartwright*, 486 U.S. at 364–65, 108 S.Ct. at 1859–60); *see Proffitt v. Florida*, 428 U.S. 242, 255–56, 96 S.Ct. 2960, 2968–68, 49 L.Ed.2d 913 (1976) ("especially heinous, atrocious, or cruel" factor not unconstitutionally vague when limited to "conscienceless or pitiless crime which is unnecessarily torturous to the victim"). Mr. Pitera notes that in *Walton* the court, rather than the jury, made the capital punishment determination. The distinction has no bearing on his vagueness challenge. The prior approval of a narrowing definition referred to in *Walton* was in the context of a jury sentencing decision. *Walton v. Arizona*, 497 U.S. at ——, 110 S.Ct. at 3058 (citing *Maynard v. Cartwright*, 486 U.S. at 362–65, 108 S.Ct. at 1858–60); *cf. Shell v. Mississippi*, 498 U.S. 1, ——, 111 S.Ct. 313, 314, 112 L.Ed.2d 1 (1990) (Marshall, J., concurring) (acknowledging that a sufficiently precise instruction by the court to a jury can be used to give content to a vague statutory factor).

Moreover, in *Walton*, the cited aggravating factor was vague on its face. Defendant was simply alleged to have committed murder "in an especially heinous, cruel or depraved manner." The Supreme Court nevertheless upheld the death sentence imposed because (1) it was persuaded that the Arizona Supreme Court had, in previous decisions, construed the factor narrowly to meet constitutional requirements, and (2) it assumed that trial judges know and apply controlling law. *Walton v. Arizona*, 497 U.S. at ——, 110 S.Ct. at 3057. By contrast, § 848(n)(12) suffers no facial infirmity. By statutorily requiring proof of "torture or serious physical abuse to the victim," Congress has expressly narrowed the term "heinous, cruel or depraved manner" in a way specifically approved by the Supreme Court. *See United States v. Pretlow*, 779 F.Supp. at 773; *United States v. Cooper*, 754 F.Supp. at 623.

This court will, of course, instruct the jury as to its duties with respect to § 848(n)(12). The parties will have the opportunity to comment on the instruction to ensure against vagueness. Mr. Pitera already cites authority supporting an instruction that brutal conduct only qualifies as "torture" or "serious physical abuse" if it was inflicted before, rather than after, the death of a victim. *See Godfrey v. Georgia*, 446 U.S. at 431–32, 100 S.Ct. at 1766–67; *United States v. Pretlow, supra; United States v. Cooper, supra.* At oral argument, the government advised that the conduct on which it would rely in seeking to prove this factor would have occurred before the victims' death.

Relying on the statutory requirement that "torture or serious physical abuse be proved," and confident that a sufficiently specific charge can be fashioned as to these elements, the court rejects defendant's vagueness challenge to § 848(n)(12).

### C. *Non–Statutory Aggravating Factors*

Defendant and *amici* challenge that part of § 848(j) permitting the prosecution to select the non-statutory aggravating

---

5. *Amici* argue that § 848(n)(12) duplicates the crime because "[a] person of ordinary sensibility could fairly characterize almost every murder as [heinous, cruel or depraved]." *See Godfrey v. Georgia, supra,* "[T]orture or serious physical abuse," however, are not necessarily present in every murder. Thus, this court rejects the argument that § 848(n)(12) serves no real narrowing function.

factors that it will present for jury consideration at the sentencing hearing. *Amici* contend that the use of such factors always injects arbitrariness and capriciousness into the sentencing process. Mr. Pitera submits that, if non-statutory aggravating factors are weighed against mitigating factors, "proportionality review" by an appellate court is constitutionally mandated. He further argues that the discretion here afforded federal prosecutors constitutes an impermissible delegation of Congress's legislative powers and runs afoul of the *ex post facto* clause. The court is unpersuaded by these arguments.

### 1. Non–Statutory Aggravating Factors Always Arbitrary and Capricious

■ *Amici*'s contention that any consideration of non-statutory aggravating factors is constitutionally suspect has been squarely rejected by the Supreme Court in *Zant v. Stephens, supra.* In that case, the Court held that the invalidation of one of three statutory aggravating factors did not require reversal of a death sentence since the two remaining statutory aggravating factors supported the sentence, and since the information received pursuant to the invalid factor was properly considered as a non-statutory aggravating factor. The Court explained the different purposes served by statutory and non-statutory aggravating factors:

> [S]tatutory aggravating circumstances play a constitutionally necessary function at the stage of legislative definition: they circumscribe the class of persons eligible for the death penalty. But the Constitution does not require the jury to ignore other possible aggravating factors in the process of selecting, from among that class, those defendants who will actually be sentenced to death. What is important at the selection stage is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime.

462 U.S. at 878–79, 103 S.Ct. at 2743–44 (emphasis in original).

The statutory scheme here at issue similarly involves a congressional narrowing of the class of persons eligible for the death penalty, both as a result of the limited homicidal acts that Congress has labeled "capital" and by the required proof of statutory aggravating factors. Non-statutory aggravating factors are considered only after a defendant's membership in this narrow class is established beyond a reasonable doubt and only as a part of the jury's individualized sentencing consideration. Thus, although non-statutory aggravating factors cannot serve both to identify the class of capital defendants and to inform a jury's individualized sentencing decision, where, as in this case, the non-statutory factors perform only the latter task, their consideration does not render a capital sentencing decision arbitrary or capricious. *See Barclay v. Florida,* 463 U.S. 939, 957, 103 S.Ct. 3418, 3428, 77 L.Ed.2d 1134 (1983) ("[I]t is clear that ... [there is] no constitutional defect in a sentence based on both statutory and non-statutory aggravating factors").

### 2. Need for "Proportionality Review"

■ In capital punishment jurisprudence, "proportionality review" refers to appellate inquiry into whether imposition of the death penalty in a particular case is proportionate to the punishment imposed on others convicted of the same crime. *See Pulley v. Harris,* 465 U.S. 37, 43, 104 S.Ct. 871, 875, 79 L.Ed.2d 29 (1984). In *Pulley,* the Supreme Court held that such review, while often useful, is not constitutionally required in all capital cases. *Id.* at 50–51, 104 S.Ct. at 879–80. Defendant, however, insists that proportionality review is imperative whenever a jury weighs non-statutory aggravating factors. He cites in support of this argument a statement in *Zant v. Stephens, supra,* suggesting that the Court's approval of non-statutory aggravating factors in that case was conditioned "in part on the existence of an important procedural safeguard, the mandatory appellate review of each death sentence by the Georgia Supreme Court to avoid arbitrariness and to assure proportionality." 462 U.S. at 890, 103 S.Ct. at 2749.

Defendant overemphasizes *Zant*'s reference to proportionality review. The Su-

preme Court's focus in the quoted passage was not so much on any particular aspect of the Georgia review process as on the fact that Georgia guaranteed meaningful appellate review in every capital case, thereby ensuring against arbitrary and capricious sentencing. *See Stringer v. Black,* —— U.S. at ——, 112 S.Ct. at 1136 (emphasizing importance of "close appellate scrutiny" without reference to any particular type of review); *United States v. Pretlow,* 779 F.Supp. at 769 (rejecting argument that proportionality review is required in every case involving non-statutory aggravating factors).

This court is satisfied, for the reasons stated in Part II–F of this memorandum, that Congress has provided for full appellate review of death sentences imposed under § 848(e)(1)(A). Indeed, the court is convinced that the scope of this review is broad enough to permit appellate consideration of proportionality in an appropriate case, even though it is not required in every case. The government concurred in this suggestion at oral argument. To this extent, should Mr. Pitera be sentenced to death and should that sentence be premised on any non-statutory factor, he will be able to urge an appellate court to engage in proportionality review if that is necessary to ensure against an arbitrary sentence.

### 3. Delegation of Legislative Powers

▪ Article I, section 1 of the Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." Mindful of the Constitution's separation of powers among the branches of government, the Supreme Court has derived from the quoted passage a "non-delegation" doctrine prohibiting Congress from transferring its legislative powers to other governmental branches. *See Mistretta v. United States,* 488 U.S. 361, 371, 109 S.Ct. 647, 654, 102 L.Ed.2d 714 (1989). Defendant and *amici* submit that Congress has impermissibly delegated a part of its legislative power to fix sentence by permitting the prosecution to select the non-statutory aggravating factors on which it will rely at a capital

sentencing hearing. The court finds no impermissible delegation in this case.

In identifying and presenting non-statutory factors for the jury's consideration, the prosecution does not intrude upon the legislative prerogative either to define the capital crime or to narrow the class of persons eligible for the death penalty. As already noted, that constitutionally-mandated narrowing has been achieved by Congress in limiting the types of homicides for which the death penalty may be imposed and in requiring proof of certain statutory aggravating factors. The prosecution's role is limited to that phase of the proceeding wherein the jury makes an individualized sentencing determination as to the defendant on trial. In the course thereof the prosecution engages in advocacy, not legislation.

This conclusion, which differs from that stated in the thoughtful opinion of Judge Harold Ackerman in *United States v. Pretlow,* 779 F.Supp. at 766–67 (prosecution's ability to select non-statutory aggravating factors constitutes a delegation of legislative authority), derives from a consideration of both Congress's power to fix sentences and the executive's power to enforce the criminal laws.

▪ In an ordinary criminal case, Congress's power to fix sentence is absolute, as reflected in its ability to legislate mandatory sentences. *See Harmelin v. Michigan,* —— U.S. at ——, 111 S.Ct. at 2701–02. Historically, however, Congress has rarely enacted mandatory sentences. Mindful of the general benefits of individualized sentencing, it had for many years delegated "almost unfettered discretion" to the district courts to determine what sentence should be imposed within a wide statutory range in a given case. *See Mistretta v. United States,* 488 U.S. at 364, 109 S.Ct. at 650; *Lockett v. Ohio,* 438 U.S. 586, 605, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978) ("... in noncapital cases, the established practice of individualized sentences rests not on constitutional commands, but on public policy enacted into statutes"). Indeed, so commonplace had the exercise of such judicial discretion become that it was

difficult to think of sentencing as a matter assigned by the Constitution to the exclusive jurisdiction of any one branch of government. *Mistretta v. United States, supra.* Of course, judicial discretion with respect to sentencing has been curbed somewhat of late through the enactment of sentencing guidelines. *See* 18 U.S.C. § 3553. Not insignificantly, these guidelines are not promulgated by Congress, but rather by a hybrid entity, the Sentencing Commission, to which Congress has further delegated a portion of its power to fix sentences. *See* 28 U.S.C. § 991 *et seq.; Mistretta v. United States,* 488 U.S. at 367–70, 109 S.Ct. at 652–54.

Integral to Congress's delegation of a portion of its sentencing authority to the courts, whether before or after the advent of the sentencing guidelines, is the statutory requirement that sentencing decisions be based on a full and careful consideration of all relevant factors. Thus, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. Pursuant to this statute, both the prosecution and defense routinely cite and argue factors that they think are relevant to the court's sentencing decision. *See* Fed.R.Crim.P. 32(a). The prosecution, in engaging in such advocacy, exercises discretion derived from the executive's enforcement powers, not from any delegated legislative powers. Such discretion is not static. In the first instance, it requires the selection from among different cases of those most appropriately prosecuted. It next requires the identification and presentation of evidence most likely to persuade a jury to convict. Finally and in the same vein, it involves a proffer to the court of further facts, sometimes not even admissible at trial, *see, e.g.,* Fed.R.Evid. 404(b), about the character of the defendant or the crime committed, that may assist the court in exercising its congressionally-delegated sentencing discretion. The distinction between such prosecutorial conduct and the exercise of legislative powers is significant,

for many statutes "depend[ ] on the discretion of some person or persons to whom is confided the duty of determining whether the proper occasion exists for executing them. But it cannot be said that the exercise of such discretion is the making of the law." *Field v. Clark,* 143 U.S. 649, 694, 12 S.Ct. 495, 505, 36 L.Ed. 294 (1892) (quoting *Moers v. City of Reading,* 21 Pa. 188, 202 (1853)).

These principles are even more pertinent in the context of capital sentencing, for the individualized consideration that Congress has favored generally in the criminal law is constitutionally mandated when a defendant faces the death penalty. Quite simply, death is the one sentence that Congress cannot make mandatory. *See Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976); *accord Sumner v. Shuman,* 483 U.S. 66, 107 S.Ct. 2716, 97 L.Ed.2d 56 (1987); *see also Harmelin v. Michigan, supra.* It must delegate a portion of its sentencing authority, whether to the courts or to a jury, in order to ensure that a capital defendant is treated as a unique human being. Indeed, individualized sentencing is so important to the constitutional scheme that any legislative attempt to limit a defendant's ability to advocate mitigating circumstances to a jury is unconstitutional. *See Lockett v. Ohio,* 438 U.S. at 605, 98 S.Ct. at 2965. Neither Mr. Pitera nor *amici* suggest that the defense exercises "legislative" powers when it selects the mitigating factors to be presented and, indeed, there would be no reasonable basis for so viewing such conduct.

Although the Supreme Court has not required legislatures to permit jury consideration of all relevant aggravating factors in pursuing individualized capital sentencing, it clearly favors procedures that do "not ... impose unnecessary restrictions on the evidence that can be offered at [a capital] sentencing hearing.... We think it desirable for the jury to have as much information before it as possible when it makes the sentencing decision." *Gregg v. Georgia,* 428 U.S. at 203–04, 96 S.Ct. at 2939 (opinion of Stewart, Powell, and Stevens, JJ.). The

Court recently reiterated this preference for full consideration of the defendant's character and the circumstances of the crime by overruling one of its own capital decisions curbing the use of aggravating factors. *See Payne v. Tennessee,* —— U.S. at ——, 111 S.Ct. at 2607 (limitation on prosecution's ability to offer victim impact evidence "unfairly weighted the scales in a capital case" in favor of the defense).

In enacting § 848(j), Congress both satisfies its constitutional obligation to provide for individualized capital sentencing and expressly endorses full jury consideration of all relevant factors, whether in mitigation or aggravation. The requirement that the prosecutor advise the defendant in advance of the aggravating factors to be presented is more reflective of a desire to ensure fairness to the defendant than to limit the jury's access to relevant information.

In identifying non-statutory aggravating factors pursuant to § 848(j), the prosecution plays virtually the same role in a capital sentencing proceeding as it does in a non-capital one. *See* Fed.R.Crim.P. 32(a) (prosecution entitled to be heard at sentence). It brings relevant facts to the sentencer's attention and urges it to reach a particular result. In a capital case, this advocacy will, in no small part, reflect the prosecution's considered judgment as to why the case was a "proper occasion" for serving a death penalty notice in the first place: an enforcement, not a legislative, decision. *See Field v. Clark, supra.* Such advocacy does not, however, involve the prosecution in the fixing of sentence. That remains exclusively the jury's function. Indeed, the jury remains free to reject imposition of the death penalty even if fully persuaded of the prosecution's position. The court thus finds no delegation of legislative authority to the prosecutor in § 848(j).

■ Even if § 848(j) did involve a delegation of legislative power, it would not be unconstitutional. *See United States v. Pretlow,* 779 F.Supp. at 767–68 (upholding § 848(j) as a permissive delegation of legislative power). The non-delegation doctrine does not bar Congress from obtaining assistance from coordinate branches of government so long as it articulates an "intelligible principle" by which the authorized body is to exercise its delegated powers. *Mistretta v. United States,* 488 U.S. at 372, 109 S.Ct. at 654 (quoting *J.W. Hampton Jr., & Co. v. United States,* 276 U.S. 394, 409, 48 S.Ct. 348, 352, 72 L.Ed. 624 (1928)). Although defendant and *amici* suggest that these principles must be "specific" when Congress delegates its criminal legislative powers, the Supreme Court has never formally adopted this standard. *See Touby v. United States,* —— U.S. ——, ——, 111 S.Ct. 1752, 1756, 114 L.Ed.2d 219 (1991) (Court finds "specific guidance" provided, without holding that such is required). *Touby* involved Congress's power to define crimes, an area where delegation has been both infrequent and circumspect. By contrast, as already noted, Congress has traditionally delegated its sentencing powers quite broadly. Thus, in *Mistretta,* the Court held that a delegation in this area need only set forth "broad general directives" to guide a coordinate branch. *Mistretta v. United States,* 488 U.S. at 372, 109 S.Ct. at 654.

The court is satisfied that Congress has adequately provided such directives in this case. Although § 848(j) plainly contemplates a full individualized sentencing hearing, the law permits only non-statutory factors that are "more probative than prejudicial" to be submitted to the jury. In the capital context, probative information has generally been held to pertain either to a defendant's character or to the circumstances of the charged crime. *E.g., Zant v. Stephens,* 462 U.S. at 878–79, 103 S.Ct. at 2743–44. There is no reason to think that Congress intended any other meaning. It is, moreover, the trial court that determines whether proffered factors are more probative than prejudicial to exploration of a defendant's character and the charged crime. Such judicial review "perfects a delegated-lawmaking scheme by assuring that the exercise of such power remains within statutory bounds." *See Touby v. United States,* —— U.S. ——, 111 S.Ct. at 1758 (Marshall, J., concurring); *see United States v. Cooper,* 754 F.Supp. at 623 (pros-

ecutorial discretion in selecting non-statutory aggravating factors under § 848(j) not unlimited given judicial determination of what is relevant).

The court thus rejects defendant's and *amici's* delegation challenge to the statute's provision for consideration of non-statutory aggravating factors finding (1) that if the jury finds proved both the crime of conviction and the statutory aggravating factors, the prosecution's presentation of non-statutory factors is an exercise in advocacy derived from the executive's discretion to prosecute, not the legislature's power to fix sentence, and (2) that, even if this limited exercise of prosecutorial discretion were deemed to constitute a legislative delegation, its exercise is sufficiently circumscribed, both by the statute and by judicial review, to ensure against overbroad application.

### 4. Ex Post Facto Implications

■■■ Article I, section 9 of the Constitution prohibits *ex post facto* laws. The Supreme Court has interpreted the clause to proscribe any legislation (1) making illegal that which was legal at the time of the alleged criminal activity, (2) increasing the punishment for a crime after its commission, or (3) depriving the accused of any legal defense available at the time the crime was committed. *Collins v. Youngblood,* 497 U.S. 37, ——, 110 S.Ct. 2715, 2724, 111 L.Ed.2d 30 (1990). Mr. Pitera contends that any government reliance, in aggravation of the homicides charged in Count Three, on other murders he may have committed prior to passage of § 848(e)(1)(A) violates the *ex post facto* clause.

The argument is flawed in several respects. First, Count Three does not involve, as Mr. Pitera urges, a "straddle" crime. Such a crime holds a defendant accountable for conduct that occurs in part before and in part after the enactment of the relevant law. In straddle crimes—for example, racketeering charges involving one predicate act occurring prior to passage of the statute, and another after enactment—a defendant must be given clear

statutory notice of what continuing conduct can resurrect his past misdeeds, for the earlier acts are themselves elements of the crime of conviction. *See, e.g., United States v. DeStafano,* 429 F.2d 344, 347 (2d Cir.1970), *cert. denied,* 402 U.S. 972, 91 S.Ct. 1656, 29 L.Ed.2d 136 (1971); *United States v. Field,* 432 F.Supp. 55, 59 (S.D.N.Y.1977), *aff'd mem.,* 578 F.2d 1371 (2d Cir.), *cert. dismissed,* 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978). In this case, the government's reliance on other homicides in aggravation of those charged in Count Three does not make those earlier murders any part of the crime of conviction.

Neither does the government here seek to increase the punishment for any of the earlier homicides, as defendant also suggests. At most, it uses this earlier conduct as evidence of Mr. Pitera's character to assist the jury in determining whether it should impose the maximum sentence of death for Count Three. In *Gryger v. Burke,* 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948), the Supreme Court upheld, against an *ex post facto* challenge, a statute permitting enhancement of sentence for crimes committed before passage of the crime of conviction. The enhanced penalty was "not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one." *Id.* at 732, 68 S.Ct. at 1258; *Covington v. Sullivan,* 823 F.2d 37, 39–40 (2d Cir.1987) (relying on *Gryger* to uphold enhanced sentencing provision of New York law against *ex post facto* challenge), *see also United States v. Minicone,* 1992 WL 15269, 1992 U.S.App. LEXIS 7630 (1992) (upholding guideline sentence for RICO conspiracy offender who committed no predicate acts after date of guidelines because he did not withdraw from conspiracy) (on rehearing).

Moreover, this case differs from *Gryger* in that the death penalty is not an *enhanced* punishment dependent upon the proof of non-statutory aggravating factors. It is the *maximum* penalty, which a jury can recommend in the complete absence of

any proof of non-statutory aggravating factors if it is satisfied that statutory aggravating factors outweigh any mitigating factors. Similarly, the jury is always free to reject the death penalty even if persuaded beyond a reasonable doubt that defendant committed all the non-statutory aggravating factors proffered.

Viewed in this light, a jury's consideration of these prior crimes not only does not implicate the *ex post facto* clause; it comes squarely within the broad review of all relevant facts and circumstances that ideally characterizes individualized sentencing. Indeed, in a non-capital context, the Second Circuit has specifically upheld a sentencing court's consideration of prior criminal conduct to which defendant pleaded guilty but had not yet been formally sentenced. *See United States v. Sturgis*, 869 F.2d 54, 56–57 (2d Cir.1989) (affirming upward departure). Such conduct was found relevant to a defendant's character, since it suggested he was more likely to commit other crimes. *Id.* So in this case, a jury is entitled to consider whether Mr. Pitera may not only have intentionally killed Messrs. Leone and Stern, but also other individuals, which murders may have involved torture or serious physical abuse to the victims. These factors are relevant to his character and his propensity to commit violent crimes. Because such consideration neither exposes him to conviction for criminal conduct of which he was not given fair notice nor subjects him to further punishment for earlier crimes, the court finds no *ex post facto* defect in the statutory scheme.

### D. *Mitigating Factors*

■ *Amici's* contention that the enumerated mitigating factors in § 848(m) impermissibly limit what a defendant may present at a sentencing hearing merits little discussion. Section 848(j) expressly provides that a defendant may proffer "any ... mitigating factors set forth in [§ 848(m)] ... *or* any other mitigating factor...." (emphasis added). Thus, Congress has ensured compliance with those Supreme Court cases holding that a capital defendant cannot be precluded from proffering any factors relevant to his character

or the circumstances of the crime "which may call for a less severe penalty." *Lockett v. Ohio*, 438 U.S. at 605, 98 S.Ct. at 2965; *accord Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989); *Sumner v. Shuman*, 483 U.S. 66, 107 S.Ct. 2716, 97 L.Ed.2d 56 (1987); *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982).

### E. *Evidentiary Standard*

■ The Federal Rules of Evidence do not apply at a capital sentencing hearing. 21 U.S.C. § 848(j). Mr. Pitera contends that this omission invites an evidentiary "free for all" lacking the heightened reliability essential to a death penalty proceeding. This issue may never surface in this case since the government advises that its proof as to aggravating circumstances will likely duplicate its evidence at trial and, thus, necessarily conform to the Federal Rules. Nevertheless, because it neither concedes the point nor expressly limits its presentation, the court considers defendant's argument.

It is undisputed that "[i]n capital proceedings generally, [the Supreme Court] has demanded that factfinding procedures aspire to a heightened standard of reliability." *Ford v. Wainwright*, 477 U.S. 399, 411, 106 S.Ct. 2595, 2602, 91 L.Ed.2d 335 (1986). Should this case require a sentencing hearing, this court will be obliged to ensure such heightened reliability. The court is unpersuaded, however, that the standard can be met only through rigid adherence to the Federal Rules of Evidence.

The Federal Rules of Evidence are critical to the conduct of criminal trials to enable "truth [to] be ascertained and proceedings [to be] justly determined." Fed. R.Evid. 102. But the focus of a trial is singular: "whether a defendant is guilty of having engaged in criminal conduct of which he has been specifically accused." *Williams v. New York*, 337 U.S. 241, 246, 69 S.Ct. 1079, 1082, 93 L.Ed. 1337 (1949). An individualized consideration of sentence, by contrast, necessitates a broader inquiry

into all aspects of the defendant's life and the crime committed. A simple example best illustrates why the concerns of the two proceedings are not always best served by the Federal Rules of Evidence. At trial, a jury generally cannot consider evidence of a defendant's past criminal conduct in deciding whether he has committed the charged offense. Fed.R.Evid. 404(b). That precise evidence is, however, deemed highly probative at sentencing. *See* U.S.S.G. § 4A1.1.

In *Williams v. New York, supra,* a capital case, the Supreme Court held that a sentencer should "not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial." 337 U.S. at 247, 69 S.Ct. at 1083. *Williams* was, of course, decided before *Furman v. Georgia, supra.* Some care must therefore be taken not to read it so broadly as to impinge on a capital defendant's particular interest in the reliability of his sentencing proceedings. Thus, in *Gardner v. Florida,* 430 U.S. 349, 355–59, 97 S.Ct. 1197, 1203–05, 51 L.Ed.2d 393 (1977), the Supreme Court rejected an argument that *Williams* permitted the use of confidential information at a capital sentencing proceeding. The reliability of information not subject to defense scrutiny and challenge simply could not be assumed. But neither *Gardner* nor any other case retreats from the basic holding of *Williams:* that the Federal Rules of Evidence do not control sentencing hearings.

Indeed, *Williams* was cited in *Lockett v. Ohio, supra,* to support the conclusion that no limitation can be placed upon a capital defendant's ability to present mitigating evidence. *Lockett* was extended in *Green v. Georgia,* 442 U.S. 95, 97, 99 S.Ct. 2150, 2151, 60 L.Ed.2d 738 (1979), to preclude courts from mechanically applying rules of evidence to deny capital defendants the

right to offer otherwise reliable information in a sentencing proceeding. Common sense suggests that Congress, in enacting that portion of § 848(j) expressly eliminating the need for strict compliance with the Federal Rules of Evidence, was seeking to bring the federal capital statute within the constitutional parameters outlined in *Green* and *Williams.*

This conclusion is not undermined by Supreme Court cases permitting different rules to apply to the parties at capital sentencing hearings. *E.g., McKoy v. North Carolina,* 494 U.S. 433, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990) (fact that state required unanimous finding as to aggravating factors did not permit it to require unanimity as to mitigating factors).[6] The Court's concern has been less with the precise rules that legislatures apply to capital sentencing proceedings than with ensuring that any factfinding thereunder is highly reliable.

This court expects that in many circumstances reference to the Federal Rules of Evidence will be useful in deciding whether information proffered at a capital sentencing hearing is sufficiently reliable to be more probative than prejudicial. The Rules will not, however, be determinative. For example, they tolerate multiple layers of hearsay, without requiring judicial inquiry into reliability. *See* Fed.R.Evid. 805. The heightened standard applicable to capital sentencing proceedings may, however, demand further indicia of reliability before a court can say that the probative value of any such hearsay outweighs its prejudicial potential. Because of this heightened standard, a court's consideration of the probative value of information compared to its prejudicial impact may yield different results under § 848(j) than under Fed.R.Evid. 403. By way of contrast, certified judgments of prior convictions are highly reliable evidence and may be admissible at a capital sentencing hearing as probative

---

6. The distinctions that have been drawn have not gone uncriticized. *See, e.g., Walton v. Arizona,* 497 U.S. at ——, 110 S.Ct. at 3058 (Scalia, J., concurring) (suggesting that different treatment of aggravating and mitigating factors in various cases enhances the likelihood of random capital sentencing); *Lockett v. Ohio,* 438

U.S. at 629, 98 S.Ct. at 2973 (Rehnquist, J., dissenting). *But see Walton v. Arizona,* 497 U.S. at ——, 110 S.Ct. at 3089–92 (Stevens, J., dissenting) (distinguishing between arbitrary definition of capital class and discretion to show mercy to those who come within properly-narrowed class).

proof of a defendant's character regardless of the limitations of Fed.R.Evid. 404(b).

The constitutional mandate is for a sentencing proceeding that ensures heightened reliability. The court is convinced that such a standard can adequately be factored into a consideration of whether proffered evidence is more probative than prejudicial. The court accordingly rejects defendant's challenge to the statute's evidentiary standard.

### F. Meaningful Appellate Review

■ Mr. Pitera and *amici* both contend that meaningful appellate review is an essential element of any capital punishment scheme and that the review provided under § 848(q) is constitutionally inadequate. The government initially meets this argument by insisting that there is no constitutional right to appellate review. *E.g., United States v. MacCollom,* 426 U.S. 317, 323, 96 S.Ct. 2086, 2090, 48 L.Ed.2d 666 (1976); *Ross v. Moffitt,* 417 U.S. 600, 610, 94 S.Ct. 2437, 2443, 41 L.Ed.2d 341 (1974). While this may be true generally, it cites to no instance where a capital sentencing scheme without appellate review has been upheld. In case after case, the Supreme Court has identified meaningful appellate review as a critical element in ensuring against arbitrary and capricious capital sentencing. *E.g., Stringer v. Black,* —— U.S. at ——, 112 S.Ct. at 1136; *Parker v. Dugger,* —— U.S. ——, —— – ——, 111 S.Ct. 731, 739–40, 112 L.Ed.2d 812 (1991); *Clemons v. Mississippi,* 494 U.S. 738, 749, 110 S.Ct. 1441, 1448, 108 L.Ed.2d 725 (1991); *Pulley v. Harris,* 465 U.S. at 54, 104 S.Ct. at 881 (Stevens, J., concurring); *Zant v. Stephens,* 462 U.S. at 890, 103 S.Ct. at 2749; *Gregg v. Georgia,* 428 U.S. at 198, 96 S.Ct. at 2936 (opinion of Stewart, Powell, and Stevens, JJ.). Thus, if the issue were really in dispute, it would by no means be obvious that the instant statute could survive an eighth amendment challenge in the absence of any provision for appellate review. *See United States v.*

*Pretlow,* 779 F.Supp. at 763 (a capital statute that failed to provide for direct appellate review would be unconstitutional).[7]

In this case Congress has provided for appellate review. 21 U.S.C. § 848(q). The issue is thus whether the scope of that review is so limited as to cause the entire capital scheme to run afoul of the eighth amendment. Mr. Pitera cites a portion of § 848(q)(3) as evidence of such impermissible limitation:

[T]he court shall affirm the sentence if it determines that—

(A) the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor; and

(B) the information supports the special findings of the existence of every aggravating factor upon which the sentence was based, together with, or the failure to find, any mitigating factors as set forth or allowed in this section.

Not insignificantly, the section further provides that "[*i*]*n all other cases,* the court shall remand the case for reconsideration under this section." *Id.* (emphasis added). Nevertheless, Mr. Pitera contends that, since no express provision is made for review of legal errors that may occur at the sentencing hearing, the law impermissibly requires affirmance of a death sentence even in the face of plain errors such as inflammatory prosecutorial remarks, improper jury instructions or unsuitable jury behavior.

Defendant's argument depends on a crabbed reading of the statute that ignores two important points. First, Congress has mandated appellate consideration of whether a capital sentence was infected by "any arbitrary factor." The term "arbitrary" has particular meaning in modern death penalty jurisprudence. As the Supreme Court cases relied on in this memorandum amply demonstrate, although the death penalty, *per se,* is not violative of the eighth amendment, any imposition that is

---

7. Indeed, the government conceded at oral argument that there would be a serious equal protection issue presented if Congress were to provide a right to appeal for all criminal defendants except those facing the death penalty. Since the capital statute in fact provides for appellate review, this court does not further discuss this point, which was argued by *amici.*

arbitrary and capricious is impermissibly cruel and unusual. An arbitrary factor must perforce include errors of law that are not harmless, for such errors, particularly in the context of a weighing statute, may impermissibly tip the scales in favor of death. *See Stringer v. Black, supra.* Indeed, *amici* suggest that this is a reasonable interpretation of the statute and the government concurs. *See United States v. Pretlow,* 779 F.Supp. at 764 (review of "arbitrary factors" under § 848(q)(3) includes harmful errors of law).

Second, defendant overlooks the section immediately preceding § 848(q)(3), wherein Congress makes plain that appellate review of a capital sentence is to be exhaustive.

> On review of the sentence, the court of appeals shall consider the record, the evidence submitted during the trial, the information submitted during the sentencing hearing, the procedures employed in the sentencing hearing, and the special findings returned under this section.

21 U.S.C. § 848(q)(2). This court thus concludes that no aspect of a capital sentencing proceeding is impervious to appellate review. If any feature—whether the vagueness of a factor, or the sufficiency of the information adduced, or a court's instructions, or a prosecutor's remarks, or a jury's conduct—reveals that the sentencing decision may have been arbitrarily arrived at, remand is contemplated.

The precise form of review to be undertaken pursuant to § 848(q) is not specified. The statute is thus fairly interpreted to permit whatever review is reasonably necessary to ensure against arbitrary decisionmaking. At oral argument this court suggested, and the government concurred, that this could even include proportionality review in a case where the appellate court thought such was essential to ensuring

that a capital sentence was not arbitrary. Although Congress has not expressly required proportionality review in § 848(q) for every capital case, neither has it forbidden it in any case.

Because this court finds no basis for thinking that the court of appeals will be limited in its power fully to review any sentence imposed, this court rejects this aspect of defendant's and *amici*'s constitutional challenge.

## III. Arbitrary and Vindictive Prosecution

Defendant contends that he has been arbitrarily and vindictively singled out for capital punishment in violation of the due process clause. The claim is without merit.

### A. *Arbitrary Prosecution*

 Mr. Pitera's arbitrariness complaint hinges on the government's failure to seek the death penalty against co-defendants Richard David, Frank Martini, and William Bright, all of whom were also charged with homicidal acts linked to drug trafficking.[8] The facts alleged in the case demonstrate that the four men are not, in fact, similarly situated. Mr. Pitera is the purported head of a significant drug enterprise. His three co-defendants are, at best, subordinate members of the enterprise. Mr. Pitera is alleged to have personally committed seven of the nine murders charged in the indictment, including the two that are the subject of Count Three. While various co-defendants assisted Mr. Pitera in one or more of these homicides, he is alleged to have been the principal actor. Moreover, the government contends that it was Mr. Pitera who instigated both the torture to which various victims were subjected before their deaths and the dismemberment that followed. Under the to-

---

**8.** Messrs. David, Martini, and Bright have all entered guilty pleas in the pending case. Mr. David pleaded guilty to racketeering, admitting participation in a marijuana distribution conspiracy and in the murder of Talal Siksik. He faces a maximum term of 20 years incarceration, pursuant to the pre-guideline sentencing scheme. Mr. Bright pleaded to drug conspiracy and racketeering, admitting involvement in the Leone/Stern homicides. Mr. Martini pleaded guilty to racketeering, confessing his involvement in the Acosta/Aguilera murders and in cocaine trafficking. The Bright and Martini pleas were entered pursuant to Fed.R.Crim.P. 11(e)(1)(C) and, subject to court approval, expose each defendant to a maximum of 204 months incarceration without parole. Mr. Martini has, however, applied to the court to withdraw his guilty plea, which motion is still pending.

tality of these circumstances, this court cannot say that the government made an arbitrary decision in selecting Mr. Pitera alone, among the defendants in this case, for possible capital punishment.

Insofar as defendant and *amici* contend that any exercise of discretion by the prosecutor in selecting the defendants who will be charged with capital crimes necessarily implicates the eighth amendment's ban on arbitrary and capricious imposition of the death penalty, they pursue an argument explicitly rejected by the Supreme Court in *Gregg v. Georgia, supra.* There simply is no constitutional requirement that "prosecuting authorities charge a capital offense whenever arguably there [has] been a capital murder...." *Id.* at 199 n. 50, 96 S.Ct. at 2937 n. 50 (opinion of Stewart, Powell, and Stevens, JJ.); *id.* at 225, 96 S.Ct. at 2949 (opinion of White, J., Burger, C.J., and Rehnquist, J., concurring). Thus, whether the crime is capital or not, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in its discretion." *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978); *United States v. Stanley,* 928 F.2d 575, 580–81 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991). Deference to the prosecutor "rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review." *Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985). Moreover, undue inquiry into prosecutorial decisions "delays the criminal proceeding, threatens to chill law enforcement [efforts] ... and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy." *Id.* Concededly, due process will not tolerate a prosecutor's selection of defendants based on invidious factors. *Bordenkircher v. Hayes,* 434 U.S. at 364, 98 S.Ct. at 668; *United States v. Stanley,* 928 F.2d at 581. But the defense does not contend that any such factors are here at issue.

The court therefore finds that the decision to file a death penalty notice against Mr. Pitera, but not against various co-defendants, was not arbitrary.

## B. *Vindictive Prosecution*

■ Mr. Pitera claims that the death penalty was sought in this case in vindictive response to his rejection of a government plea offer and demands for his cooperation. Although due process prohibits judges or prosecutors from vindictively retaliating against defendants who properly invoke their constitutional rights, including the right to a jury trial and the right to appeal, *see North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), there is simply no "objective evidence" before the court to support a finding of vindictiveness in this case. *See United States v. Goodwin,* 457 U.S. 368, 380 n. 12 and 384, 102 S.Ct. 2485, 2492 n. 12 and 2494, 73 L.Ed.2d 74 (1982).

The chief prosecutor, David Shapiro, has filed an affirmation that (1) details his limited contact with Mr. Pitera on the day of the arrest, (2) denies any threat to pursue capital charges if defendant did not cooperate, and (3) recounts his conversations with Mathew Mari, defendant's original retained counsel, as to both the possibility of capital charges being filed, and the opportunity that would be afforded the defense to persuade the United States Attorney that such charges were unwarranted. In response, Mr. Mari files an affirmation that does not dispute these aspects of Mr. Shapiro's submission. Instead, it proffers a hearsay statement by Mr. Pitera attributing the offensive government conduct to unnamed officials other than Mr. Shapiro. Invited at oral argument to provide more particulars, the defense declined. Such vague hearsay is not the sort of objective evidence of vindictiveness referred to in *Goodwin. See id.*

Neither does defendant's claim give rise to a presumption of vindictiveness. Such a presumption has been applied to defendants who, after successfully pursuing appeals, are charged with more serious crimes on remand or are sentenced more

severely after retrial. *E.g., North Carolina v. Pearce, supra.* The presumption in such cases derives from a candid recognition of the "institutional bias against retrial...." *United States v. Goodwin,* 457 U.S. at 376, 102 S.Ct. at 2490.

No such obvious bias supports a pre-trial presumption of vindictiveness when charges are amended or increased. To the contrary, the Supreme Court has held that "[a] prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct." *Id.* at 382, 102 S.Ct. at 2493. Thus, in *Bordenkircher v. Hayes, supra,* the Court upheld against a vindictive prosecution claim the filing of additional charges against a defendant who was threatened with same as the consequence of rejecting a plea offer. The Court explained that no "element of punishment or retaliation" was present since defendant was "free to accept or reject the prosecutor's offer." 434 U.S. at 363, 98 S.Ct. at 2483; *accord Spinkellink v. Wainwright,* 578 F.2d 582, 608 (5th Cir.1978) (applying *Bordenkircher* to capital case), *cert. denied,* 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979); *see also Brady v. United States,* 397 U.S. 742, 749–51, 90 S.Ct. 1463, 1469–70, 25 L.Ed.2d 747 (1970) (guilty plea to charge carrying life sentence not involuntary because prompted in part by fear of death penalty).

In contrast to *Bordenkircher,* it is not even clear in this case that Mr. Pitera was ever threatened with increased charges. As noted, he has declined the court's invitation to supplement his lawyer's hearsay submission in this regard. The matter is of no import. If Mr. Pitera was aware that by rejecting a plea offer he exposed himself to a capital charge, *Bordenkircher* precludes a finding of vindictive prosecution. If the notice was filed without any warning as to the possibility of a capital count, defendant's vindictiveness claim would be purely speculative. In *Goodwin,* the Court rejected such a basis for presuming vindictiveness, finding it lacking even the *Bordenkircher* predicate. *United States v. Goodwin,* 457 U.S. at 382 n. 15, 102 S.Ct. at 2493 n. 15. Such a sequence of events may evidence an "opportunity for vindictiveness," but absent more is insufficient to give rise to a presumption. *Id.* at 384, 102 S.Ct. at 2494.

Mr. Pitera contends that his case is somehow different from *Bordenkircher* and *Goodwin* because the prosecutor purportedly knew all relevant facts at the time it first charged him. In fact, in *Bordenkircher,* the prosecution was similarly informed. Moreover, as the court noted in *Goodwin,* an informed prosecutorial decision depends not only on possessing the evidence, but on fully appreciating its significance and on carefully assessing "the proper extent of prosecution." *United States v. Goodwin,* 457 U.S. at 381, 102 S.Ct. at 2492. Little would be gained from a holding that encouraged prosecutors prematurely to file all possible charges in a criminal case. *See id.* at 378 n. 10, 102 S.Ct. at 2491 n. 10 (noting potential prejudice to defendant). The claim of vindictive prosecution is rejected.

## IV. Failure to Provide Means of Execution

The capital sentencing scheme at issue provides no means for its implementation. This omission is without congressional explanation.[9] The one federal judge who has actually pronounced a death sentence pursuant to § 848(e)(1)(A) has thus concluded that it cannot presently be implemented. *See United States v. Chandler,* 90–CR–266, slip op. at 4 (N.D.Ala. May 30, 1991). The executive branch, which is traditionally charged with the responsibility for carrying out sentences, is, after all, obliged to do so in accordance with enacted law. *See, e.g.,*

---

**9.** Prior federal death penalty law had provided for a defendant to be executed in whatever local facilities were available in the state where the defendant was convicted. If local law did not permit capital punishment, the court was to designate an alternate forum. *See* 18 U.S.C. § 3566 (repealed 1984). 18 U.S.C. § 3596, pending in Congress, provides for similar implementation. *See* H.R. 3371, 102nd Cong., 1st Sess. (1991), *reprinted in* H.R.Conf.Rep. No. 405, 102nd Cong., 1st Sess. 9 (1991).

18 U.S.C. § 3621 (court to commit sentenced prisoners to the custody of the Bureau of Prisons).

Amici contend that Congress's oversight is more than an embarrassment, it is a constitutional defect because (1) the prospect of an indefinite term of imprisonment, terminable only by some future execution provision, itself constitutes cruel and unusual punishment, and (2) the subsequent enactment of any implementing legislation will violate the *ex post facto* clause. Although this court is perplexed, both by Congress's failure to provide a means of execution, and by the executive's pursuit of a punishment before a means of carrying it out is specified, it must reject *amici*'s contentions because they either lack merit or are premature.

## A. Cruel and Unusual Punishment

■ *Amici*'s claim that the uncertainty inherent in Congress's failure to enact implementing legislation is itself constitutionally cruel and unusual relies on *In re Medley,* 134 U.S. 160, 10 S.Ct. 384, 33 L.Ed. 835 (1890). In that case, the Supreme Court observed that "when a prisoner sentenced by a court to death is confined in the penitentiary awaiting the execution of the sentence, one of the most horrible feelings to which he can be subjected during that time is the uncertainty ... as to the precise time when his execution will take place." *Id.* at 172, 10 S.Ct. at 388. At issue in *Medley* was legislation passed after a capital defendant was sentenced permitting the warden to withhold from him the exact date of his execution. The new statute was declared unconstitutional, but not because it was cruel and unusual. Rather, the new level of uncertainty constituted an increased punishment that violated the *ex post facto* clause. *Id.*

Assuming that *Medley* is pertinent to *amici*'s eighth amendment claim, the challenge is simply premature. Mr. Pitera has been charged with a capital crime. He has not been convicted or sentenced of one. Even if such were to be the outcome of this case, defendant would have the right to appeal. Conceivably, before such events

run their course, Congress may pass implementing legislation. Under such circumstances, Mr. Pitera would not be subject to the kind of uncertainty forecast by *amici*.

More troubling to the court is the possibility that Congress will not address the issue in the near future, such that a capital defendant, even after having pursued all appeals, could be incarcerated for several years before implementing legislation is enacted. Double jeopardy, however, proscribes multiple punishments for the same crime. *See Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). This potential concern is not ripe for consideration before the capital trial is concluded. Whether it ever needs to be addressed will depend both on the outcome of the trial and on Congress.

## B. Ex Post Facto

■ *Amici* argue that any subsequent implementing legislation will violate the *ex post facto* clause. They contend that, at present, the maximum sentence that can be imposed on Mr. Pitera is life imprisonment. Any change in this situation will constitute an impermissible increase in punishment. *See Collins v. Youngblood, supra.* The court disagrees. The maximum possible sentence that can presently be imposed upon the defendant is death. Indeed, § 848(*l*) requires a court to impose such a sentence if the jury recommends it. Thus, in *United States v. Chandler, supra,* that is the sentence that was imposed.

The fact that such a sentence cannot presently be implemented does not mean that subsequently enacted procedures will violate the *ex post facto* clause. Congress, in enacting § 848(e)(1)(A), has already served plain notice on those who would commit intentional murders in connection with significant drug dealing that they face a possible sentence of death. Thus, Mr. Pitera had fair warning of the consequences of his conduct at the time he allegedly committed the Leone/Stern homicides. *See Collins v. Youngblood,* 497 U.S. at ——, 110 S.Ct. at 2724.

In *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), the Su-

preme Court held that such fair warning was sufficient to defeat an *ex post facto* challenge. The defendant in that case was sentenced to death pursuant to a new statutory scheme enacted after *Furman v. Georgia, supra,* to cure defects in the capital statute in effect at the time he committed the crime. The Supreme Court held that the original statute adequately served "fair warning" upon defendant of the state's intent to punish murder with a sentence of death. *Dobbert v. Florida,* 432 U.S. at 297, 97 S.Ct. at 2300. Thus, statutory changes that do not increase "the quantum of punishment attached to the crime," but that simply specify the methods by which an imposed sentence is effected, do not implicate the *ex post facto* clause. *See id.* at 294, 97 S.Ct. at 2298 (statutory change was procedural and therefore not violative of *ex post facto* ).

*Amici* suggest that subsequent implementing legislation may provide for means of execution that are themselves cruel and unusual. Should any implementing legislation be subject to an eighth amendment challenge, a defendant will be heard. This court cannot, however, engage in a speculative consideration of the issue.

### Conclusion

For the reasons stated in this memorandum and order, the court finds (1) that the death penalty does not constitute cruel and unusual punishment in all cases, (2) that the capital statute here at issue does not risk arbitrary and capricious imposition of the death penalty, (3) that defendant was not arbitrarily and vindictively singled out for prosecution, and (4) that the present inability to implement a death sentence does not preclude capital prosecution. The motion challenging constitutionality is, therefore, denied.

SO ORDERED.