**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Randy Marvo SMITH, Defendant–
Appellant.**

No. 93–5837.

United States Court of Appeals,
Fourth Circuit.

Argued May 13, 1994.

Decided July 29, 1994.

called Holcombe to confirm that the change had been made.

**ARGUED:** Benjamin Thomas Stepp, Asst. Federal Public Defender, Greenville, SC, for appellant. William G. Yarborough, III, Asst. U.S. Atty., Greenville, SC, for appellee. **ON BRIEF:** J. Preston Strom, Jr., U.S. Atty., Greenville, SC, for appellee.

Before MURNAGHAN, Circuit Judge, LEGG, United States District Judge for the District of Maryland, sitting by designation, and ERWIN, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.

Affirmed by published opinion. Senior Judge ERWIN wrote the opinion, in which Judge MURNAGHAN and Judge LEGG joined.

## OPINION

ERWIN, Senior District Judge:

Appellant Randy Marvo Smith was charged with violating 21 U.S.C. § 841(a)(1) (1981), knowingly, and intentionally possessing crack cocaine, with the intent to distribute. A jury found him guilty. The district court sentenced him to a term of 136 months. On appeal, Smith challenges the district court's rulings on his motion to suppress crack cocaine found during a search of his car and a certain hotel room and the court's action regarding prosecutorial misconduct during the trial. Further, Smith challenges the sufficiency of the evidence on which his conviction is based, and he asserts a due process violation of his constitutional rights. Finally, Smith appeals the district court's decision to deny his motion for downward departure from the sentencing guidelines. Rejecting Smith's contentions, we affirm.

### I

In early September 1992, an informant told Officer Chuck Neil of the Rock Hill Police Department that two Jamaicans were residing in a local hotel and were distributing large amounts of crack. This information motivated Officer Thomas Hutchinson and other officers from the Rock Hill Police Department to monitor the hotel.

After some time, Smith and a young woman left Room 219 of the hotel and got into a car. Hutchinson followed the car to another hotel where Smith checked in. Hutchinson then approached Smith, telling him that an informant said certain persons were distributing crack in the area. Hutchinson asked Smith whether he could search the bag Smith was carrying. Smith consented, so Hutchinson conducted the search, but found no drugs. Hutchinson then asked Smith for permission to search the car Smith had been driving. In response, Smith unlocked the car door.

At the hearing on the motion to suppress the evidence found during the search, Smith testified he did not verbally answer yes, but that he did not refuse because he had been assaulted by police officers in New York on two prior occasions, and he believed that objecting to the search might trigger a confrontation. (J.A. 93.) Believing Smith had consented, Hutchinson searched the car, found two bags of crack under the floor mat behind the driver's seat, and a key to Room 219 of the hotel from which Smith and his companion had recently departed. Hutchinson then arrested both individuals.

After the arrest, Smith's companion told another officer on the scene that there were probably more drugs in Room 219. Based on this information and the information the informant gave to Neil, Neil obtained a warrant to search Room 219 from the city magistrate of Rock Hill. During the search, Rock Hill police officers seized approximately two ounces of crack.

At trial, several persons present during the search and Smith's companion testified that the drugs belonged to Smith and that he organized the drug distribution.

### II

The police searched the car Smith was driving at the time of his arrest, and they searched a hotel room to which Smith had a key; the police found the key while searching the car.

## A

A police officer may conduct a search of an area without a warrant and without probable cause if the person in control of the area voluntarily consents to a search. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). In determining whether consent is voluntary, the court should look to the totality of the circumstances. *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

Factual determinations regarding searches and seizures will be overturned only if clearly erroneous. *Id.,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). This Court reviews legal conclusions related to search and seizure issues de novo. *United States v. Rusher,* 966 F.2d 868, 873 (4th Cir.), cert. denied, ─── U.S. ───, 113 S.Ct. 351, 121 L.Ed.2d 266 (1992).

At the hearing on the motion to suppress, Smith testified that he wanted to be as cooperative as possible with the police. The record shows that Smith was not under arrest, and Hutchinson testified that no officer drew his weapon, threatened Smith, or touched him.

The circumstances show that Smith allowed Hutchinson to search his bag and that when Hutchinson asked whether he could search the car, by unlocking the car door, Smith consented. That Smith thought any objection to the search could have triggered a confrontation does not negate his consent. Smith's anxiety toward police officers was a result of prior experience with New York City officers. The officers involved in this search did nothing to indicate that Smith would be harmed if he did not consent.

Based on the foregoing, the district court denied the motion to suppress.

## B

After Hutchinson searched the car and found the key to Room 219, Neil went to the city magistrate for a warrant to search the room.

To obtain a warrant, there must be probable cause. Probable cause exists where the facts and circumstances within the officer's knowledge, and of which the officer has reasonably trustworthy information are sufficient to warrant a man of reasonable caution to believe a crime is being committed. *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925).

Among other things, the officers had information from a trustworthy informant who stated that his girlfriend rented a room for two Jamaicans who were distributing drugs. The officers corroborated that the room was registered in the girlfriend's name, and when the officers called the room, a man with a Jamaican accent answered. Further, when Hutchinson seized the key to Room 219, he also seized crack; and Smith's companion told the police they could probably find more crack in Room 219.

From the evidence, we find that probable cause to search Room 219 existed and that the magistrate rightly issued the warrant.

## III

At trial, Smith's counsel asked Officer Hutchinson what Smith had told the witness about money found in Appellant's bag. The prosecutor objected to the question by stating, "Mr. Smith is in the courtroom. He can testify if he wants to." (J.A. 122.) Smith's counsel did not object to the statement, but the judge excused the jury to address the prosecutor's comment. When the jury returned, the judge gave the jury an extensive curative instruction. He told the jury that the defendant did not have to testify; that the prosecutor must prove all elements beyond a reasonable doubt; that the defendant is presumed innocent; and, that if a defendant chose not to testify, that fact could not be considered or discussed by the jury. (J.A. 265–67.)

The context of the prosecutor's statement indicates he did not intend to comment on Smith's failure to testify but intended to object to the form of the question.

## IV

Smith argues that no rational trier of fact could have found him guilty beyond

a reasonable doubt because the Government's evidence, which consisted of persons who were granted immunity and who signed plea agreements in exchange for substantial assistance motions, is somehow tainted. The credibility of witnesses is the jury's province. As evidenced by the facts given in this opinion and a review of the record, the jury's guilty verdict is supported by a sufficiency of the evidence.

## V

■ Appellant contends that his due process rights were violated because he was prosecuted in federal court instead of state court and that once the state charges were dropped, he was prosecuted in federal court because he is African–American.

■ Concurrent jurisdiction between the state and federal courts exists where cocaine is involved. This Court has not yet addressed whether prosecuting a case in federal court when the state court has concurrent jurisdiction violates the defendant's due process rights. Several circuits have ruled that where a defendant violates both state and federal laws, either or both can prosecute the defendant. *See United States v. Jacobs,* 4 F.3d 603, 605 (8th Cir.1993) (prosecuting a federal crime in federal court that could have been prosecuted in state court does not violate a defendant's due process rights); *see also United States v. Langston,* 970 F.2d 692, 699 (10th Cir.1992) (holding their "due process analysis places the responsibility for the ultimate charging decision" on the state and federal prosecutors). This Court agrees.

■ Given the above, Smith's claim that his constitutional rights were violated can stand only if he makes a prima facie showing that the federal prosecutor's charging decision was based on an impermissible classification such as race or gender. *Langston,* 970 F.2d at 699; *accord United States v. Morehead,* 959 F.2d 1489, 1499 (10th Cir. 1992).

The evidence does not tend to show that the federal government chose to prosecute Smith because he is African–American. A United States Drug Enforcement Administration agent was involved in the initial search of the car, and another agent became involved in the case the day after the arrest because of the federal nexus. Prosecuting Smith in federal court was proper.

## VI

Exercising its discretion, the district court denied Smith's motion for downward departure from the sentencing guidelines. Because such a decision is in accordance with the law, the decision below will be upheld.

The judgment of the district court is affirmed.

*AFFIRMED.*