**UNITED STATES of America,**

v.

**Omar Yusuf DesANGES, Defendant.**

No. 95–00046–H.

United States District Court,
W.D. Virginia,
Harrisonburg Division.

March 22, 1996.

John Lloyd Snook, III, Snook & Haughey, P.C., Charlottesville, VA, John S. Hart, Jr., Green & O'Donnell, Harrisonburg, VA, for defendant.

Thomas Jack Bondurant, Jr., Anthony Paul Giorno, U.S. Attorney's Office, Roanoke, VA, for U.S.

## MEMORANDUM OPINION AND ORDER

WILSON, District Judge.

Omar Yusuf DesAnges, a black male, is charged in a three count indictment with intentionally killing Sanford Datcher in the course of a conspiracy to distribute 50 or more grams of crack cocaine in violation of 21 U.S.C. § 848(e)(1)(A); conspiracy to possess with the intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1); and using or carrying a firearm during and in relation to the conspiracy to distribute crack cocaine in violation of 18 U.S.C. § 924(c). The first count carries a possible death sentence. DesAnges has moved to declare the death penalty under 21 U.S.C. § 848 facially unconstitutional on various grounds, and has moved to dismiss the indictment as racially motivated or, in the alternative, for discovery concerning selective prosecution. The United States defends the constitutionality of the statute authorizing the death penalty and denies that DesAnges' race motivated its decision to prosecute him. The United States also has moved for a pretrial ruling on the admissibility at trial of a statement made by the murder victim shortly before his death. For the reasons

stated below, the court denies DesAnges' motions to declare § 848 unconstitutional and to dismiss the indictment. The court also grants the United States' motion in limine and finds the statement admissible.

## I. Defendant's Motion to Declare 21 U.S.C. § 848 Unconstitutional

DesAnges has moved to declare 21 U.S.C. § 848 unconstitutional because it fails to afford meaningful appellate review, allows the government to identify non-statutory aggravating factors, uses a relaxed evidentiary standard at sentencing, fails to generally narrow the class of persons eligible for the death penalty, and impermissibly permits the jury to weigh a statutory aggravating factor that duplicates an element of the crime. The court finds none of these arguments persuasive and will deny the motion. The court will address DesAnges' contentions in turn.

### A. Meaningful Appellate Review

The Constitution requires meaningful appellate review of death sentences. *Parker v. Dugger*, 498 U.S. 308, 312, 111 S.Ct. 731, 734–35, 112 L.Ed.2d 812 (1991). "[M]eaningful appellate review ... ensur[es] that the death penalty is not imposed arbitrarily or irrationally ... [and] minimizes the risk of constitutional error." *Id.* at 321, 111 S.Ct. at 739 (citations omitted). DesAnges maintains that 21 U.S.C. § 848 is unconstitutional because § 848(q)(3)(A) impermissibly restricts appellate review of error at sentencing. DesAnges construes § 848(q) to limit appellate review to the "(1) evidentiary sufficiency of aggravating and mitigating factors and (2) whether arbitrary factors were in play" in the jury's decision. According to DesAnges' construction of 848(q), a wide range of legal error, such as error in instructing the jury, is not reviewable on appeal. The court concludes that DesAnges' argument is premised on a hypertechnical,

overly-narrow construction of the appellate review provisions of § 848(q), a construction that conflicts with the "elementary principle of statutory construction that a statute not be given an unconstitutional interpretation unless clearly so indicated." *Tomai–Minogue v. State Farm Mut. Auto. Ins. Co.*, 770 F.2d 1228, 1233 n. 8 (4th Cir.1985).

Rather than narrowly channeling appellate review of death sentences, § 848(q) broadly instructs the court of appeals to "consider the record, the evidence submitted during the trial, the information submitted during the sentencing hearing, the procedures employed in the sentencing hearing, and the special findings returned under [§ 848]." § 848(q)(2). The court of appeals must then affirm only if "the sentence of death was not imposed under the influence of passion, prejudice, or *any other arbitrary factor*," and if the evidence supports the necessary "special findings." § 848(q)(3)(A)–(B) (emphasis added). Although § 848(q) does not specifically catalogue "legal error," the court concludes that a death sentence based on substantial legal error is a decision based on an "arbitrary factor" that is subject to appellate review. *See United States v. Walker*, 910 F.Supp. 837 (N.D.N.Y.1995). So construed, a death sentence under § 848 is subject to meaningful appellate review, and DesAnges' challenge fails.

### B. Identification of Non–Statutory Aggravating Factors

DesAnges next maintains that 21 U.S.C. § 848 is unconstitutional because it permits the United States to identify the "non-statutory aggravating factors" that are submitted to the jury during the penalty hearing.[1] The jury weighs these non-statutory aggravating factors only if it first finds at least two statutory aggravating factors.[2] DesAnges

---

1. The non-statutory aggravating factors are those "other aggravating factors which the Government will seek to prove as the basis for the death penalty." 21 U.S.C. § 848(h)(1)(B).

2. Some clarification of the statutory scheme of 21 U.S.C. § 848 is helpful here. Section 848(e)(1)(A) provides that the death penalty is a possible punishment for:

any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1) who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results.

If the defendant is convicted or pleads guilty to such a crime, then a special penalty hearing is

argues that the wide latitude afforded the government in identifying and presenting evidence concerning non-statutory aggravating factors during the penalty hearing is an unconstitutional delegation of legislative power and violates the constitutional bans on ex post facto laws and bills of attainder. The court disagrees.

### (1) Non-delegation Doctrine

 The non-delegation doctrine flows from Article I, Section 1 of the United States Constitution. According to this doctrine, Congress may not delegate its legislative authority to the other branches of the federal government. *Mistretta v. United States,* 488 U.S. 361, 371, 109 S.Ct. 647, 654, 102 L.Ed.2d 714 (1989). However, Congress may "legislate[ ] in broad terms, leaving a certain degree of discretion · to executive or judicial actors" if Congress articulates an "intelligible principle" to guide the other branches of government. *Touby v. United States,* 500 U.S. 160, 165, 111 S.Ct. 1752, 1756, 114 L.Ed.2d 219 (1991), *citing, J.W. Hampton, Jr. & Co. v. United States,* 276 U.S. 394, 409, 48 S.Ct. 348, 352, 72 L.Ed. 624 (1928). DesAnges alleges that by allowing prosecutors to identify the non-statutory aggravating factors presented to the jury, Congress has unconstitutionally delegated its legislative power to the executive branch.

DesAnges' argument fails because he misinterprets and overstates the role of the non-statutory aggravating factors. The non-statutory aggravating factors do not narrow, limit, or affect either the class of capital crimes or the class of defendants eligible for the death penalty. That winnowing process begins with the definition of the crime itself and ends with the objective statutory aggravating factors. However, when a jury finds that the defendant committed a capital crime and that the required statutory aggravating factors exist, it should be informed fully before it decides whether the defendant will live or die. The requirement that the government notify the defendant of the "non-statutory" aggravating factors it will "seek to prove as the basis for the death penalty," 21 U.S.C. § 848(h)(1)(B), simply protects the defendant from unfair surprise at sentencing and facilitates a thorough airing of information that will guide the jury's decision.[3] The court finds that the non-statutory aggravating factors neither limit nor define the classes of crimes and defendants subject to the penalty of death, and thus, the non-delegation doctrine is not implicated.

### (2) Ex Post Facto Clause

 DesAnges next asserts that § 848 violates the Ex Post Facto Clause in Article I, Section 9 of the Constitution. He argues

---

held. § 848(g) & (i). The defendant may only be sentenced to die if the jury makes certain special findings. It must first find the existence of at least two statutory aggravating factors. § 848(k). One aggravating factor must be a state of mind factor found in § 848(n)(1) and the second can be any other factor listed in § 848(n)(2)–(12). The finding of these statutory aggravating factors is a threshold finding, i.e., if the jury does not make such a finding the death penalty may not be imposed. § 848(k).

During the penalty hearing, the government also may present evidence of other aggravating factors, not listed in the statute. These other factors are the so-called non-statutory aggravating factors. The defendant, on his own behalf, is entitled to present evidence of mitigating factors. If the jury has found the required statutory aggravating factors, it then weighs all the aggravating factors, both statutory and non-statutory, together with the mitigating factors to determine whether the death penalty should be imposed. § 848(k).

When the government intends to seek the death penalty, it must file a notice of its intent and must set forth all statutory and non-statutory aggravating factors that it will attempt to prove as a basis for the penalty. § 848(h).

3. The non-statutory aggravating factors aid in providing a broad range of information necessary for the jury's ultimate decision. The use of non-statutory aggravating factors is substantially the same as the use of similar evidence in sentencings outside the capital offense context. *See United States v. Pitera,* 795 F.Supp. 546, 562 (E.D.N.Y.), *aff'd,* 986 F.2d 499 (2d Cir.1992). As Justice Stevens has noted, while,

> a death sentence may not rest *solely* on a nonstatutory aggravating factor . . . the Constitution does not prohibit consideration at the sentencing phase of information not directly related to either statutory aggravating or statutory mitigating factors, as long as that information is relevant to the character of the defendant or the circumstances of the crime.

*Barclay v. Florida,* 463 U.S. 939, 967, 103 S.Ct. 3418, 3433–34, 77 L.Ed.2d 1134 (1983) (Stevens, J., concurring and citing *Zant v. Stephens,* 462 U.S. 862, 876–79, 103 S.Ct. 2733, 2742–44, 77 L.Ed.2d 235 (1983)) (emphasis in original).

that by allowing the prosecutor to identify non-statutory aggravating factors, the statute punishes prior innocent conduct. Again, DesAnges' argument fails. Legislation violates the Ex Post Facto Clause if it: (1) makes criminal an act that was innocent when done; (2) makes the punishment for the crime more burdensome than before; or (3) deprives the defendant of any defense available when the crime was committed. *See Beazell v. Ohio*, 269 U.S. 167, 169–70, 46 S.Ct. 68, 68–69, 70 L.Ed. 216 (1925); *Dobbert v. Florida*, 432 U.S. 282, 292–93, 97 S.Ct. 2290, 2297–98, 53 L.Ed.2d 344 (1977). The use of non-statutory aggravating factors does not violate any of these three prohibitions.

As previously stated, the statute itself defines the crimes and possible range of punishments. The crime for which DesAnges has been charged is defined in § 848, and the death penalty is unambiguously within the range of possible punishments. *See* 21 U.S.C. § 848(e)(1)(A). The conduct was prohibited and the possible punishment was established before DesAnges allegedly killed Datcher. The non-statutory factors alter neither the elements of the crime itself nor the range of punishments; rather, they help the jury determine the proper punishment within the statutory range. They are not separate offenses or penalties by themselves and do not deprive DesAnges of any available defense. Accordingly, the court finds that § 848 does not implicate ex post facto concerns.

### (3) Bill of Attainder

■ Similarly, the court rejects DesAnges' contention that allowing the government to identify and prove non-statutory aggravating factors constitutes a bill of attainder in violation of Article I, Section 9 of the Constitution. A bill of attainder is a "law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Selective Serv. Sys. v. Minnesota Public Interest Research Group*,

468 U.S. 841, 846–47, 104 S.Ct. 3348, 3351–52, 82 L.Ed.2d 632 (1984). The identification of non-statutory aggravating factors bears no resemblance to a bill of attainder. The defendant receives a judicial trial to determine guilt and punishment under § 848. As such, § 848 neither authorizes nor establishes a bill of attainder.

### C. The Applicable Evidentiary Standards

■ DesAnges also contends that the evidentiary standards employed at sentencing violate the Constitution. The court disagrees. Information relevant to an aggravating or mitigating factor is admissible at sentencing "regardless of its admissibility under the rules governing admission of evidence at criminal trials," unless (essentially tracking the language of Federal Rule of Evidence 403) "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." 21 U.S.C. § 848(j). DesAnges argues that the relaxed evidentiary rules at sentencing will produce an "evidentiary free-for-all" that will make the jury's findings unreliable. The court rejects DesAnges' argument and finds instead that § 848(j) authorizes and requires the court to make evidentiary rulings that ensure that the jury's findings are based on constitutionally reliable information.

■ The Constitution does not require the court to apply the rules of evidence at sentencing. *See Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948). Rather, evidence at sentencing is subject to a due process standard of reliability. *Id.* If the government offered unconstitutionally unreliable evidence, the court would exclude that evidence under § 848(j) because it would "unfairly prejudice" the defendant.[4] *See United States v. Pitera*, 795 F.Supp. 546, 565–66 (E.D.N.Y.), *aff'd*, 986 F.2d 499 (2d Cir.1992); *United States v.*

---

**4.** A fair sentencing requires a much broader range of information than does a trial. "[T]he possession of the fullest information possible concerning the defendant's life and characteristics" is virtually essential to the selection of a proper sentence. *Williams v. New York*, 337 U.S.

241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949). Thus, the sentencer should not "be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial." *Id.*

*Pretlow,* 779 F.Supp. 758, 771 (D.N.J.1991). Accordingly, DesAnges' challenge to the statute's evidentiary rules at sentencing fails.

## D. Narrowing the Class of Persons Eligible for the Death Penalty

DesAnges next attacks § 848 by arguing that the capital sentencing scheme fails to "genuinely narrow the class of persons eligible for the death penalty" as constitutionally required. *Zant v. Stephens,* 462 U.S. 862, 877, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235 (1983). DesAnges alleges that statutory factor § 848(n)(1) impermissibly duplicates the *mens rea* element of the capital offense, § 848(e)(1)(A). He concludes that due to this duplication, the statute impermissibly fails to decrease the group of defendants eligible for the death penalty. Assuming *arguendo* that statutory factor § 848(n)(1) and the *mens rea* element are duplicative [5] as DesAnges maintains, his argument still fails because the court concludes that the statute sufficiently narrows the class at the guilt stage and also further narrows the class at the penalty stage.

The Supreme Court addressed substantially the same duplication argument in *Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). In *Lowenfield,* the defendant was sentenced to death although the jury found but one aggravating factor and that factor duplicated an element of the crime. The Court reaffirmed that to pass constitutional muster, a capital sentencing scheme had to narrow the class of persons eligible for that sentence. *Id.* at 244, 108 S.Ct. at 554. This narrowing can be done, however, in either of two ways. First, the legislature itself may narrow the definition of the capital offense, so that the finding of guilt essentially narrows the class. *Id.* at 246, 108 S.Ct. at 555. Second, the legislature may broadly define the capital offense and provide for the narrowing of the class of eligible persons during the penalty stage by requiring the jury to make special findings of aggravating factors at that stage. *Id.*

Section 848 narrows the class of eligible defendants on both of the levels described in *Lowenfield.* First, Congress has itself limited the class of individuals eligible under § 848 by narrowly defining the crime. The class is made up of those who intentionally kill another while engaged in or in furtherance of specified federal offenses, in this case a conspiracy to distribute 50 or more grams of crack cocaine. § 848(e)(1)(A). This definition narrows the class at the guilt stage. Second, the class is again narrowed at the penalty stage. The statute requires that the jury find the existence of a second statutory aggravating factor in addition to the duplicative statutory aggravating factor embodied in § 848(n)(1). *See* 21 U.S.C. § 848(n)(2)–(12). Thus, a mere finding that the defendant committed the capital offense will not sustain a death sentence. The jury must also find an additional aggravating factor listed in the statute. This requirement further narrows, therefore, at the penalty stage, the class of defendants eligible for the death penalty. The Constitution requires no more. Consequently, the court finds that the capital sentencing scheme of § 848 sufficiently narrows the class of persons eligible for the death penalty. *United States v. McCullah,* 76 F.3d 1087, 1107–08 (10th Cir.1996); *United States v. Flores,* 63 F.3d 1342, 1369–72 (5th Cir. 1995); *United States v. Walker,* 910 F.Supp. 837 (N.D.N.Y.1995); *United States v. Bradley,* 880 F.Supp. 271 (M.D.Pa.1994); *United States v. Pitera,* 795 F.Supp. 546 (E.D.N.Y.), *aff'd,* 986 F.2d 499 (2d Cir.1992); *United States v. Pretlow,* 779 F.Supp. 758 (D.N.J. 1991); *United States v. Cooper,* 754 F.Supp. 617 (N.D.Ill.1990).

## E. Prejudicial Weighing of Statutory Factor § 848(n)(1)

DesAnges also asserts that it is constitutionally impermissible to allow the jury to weigh the state of mind statutory factor when making its ultimate decision regarding the death penalty because that factor is al-

---

5. Section 848(e)(1)(A) defines the elements of the crime for which DesAnges has been indicted. One of the elements—a state of mind element—requires that the perpetrator of the crime "intentionally kill[ ]" the victim. One of the statutory aggravating factors alleged, and which must be found at sentencing before the death penalty may be imposed, essentially mirrors the same state of mind element. *See* § 848(n)(1).

ready an element of the crime. He essentially contends that because statutory aggravating factor § 848(n)(1) duplicates the *mens rea* for the crime, it unfairly tips the sentencing balance by letting the government argue the *mens rea* as an aggravating factor at the penalty stage, which the jury already found to exist at the guilt stage. *See Pitera,* 795 F.Supp. at 557. The court disagrees with DesAnges' conclusion.

First, a "highly culpable mental state" is properly considered in a capital sentencing decision. *See Tison v. Arizona,* 481 U.S. 137, 157–58, 107 S.Ct. 1676, 1687–88, 95 L.Ed.2d 127 (1987). Second, any duplication can be tempered by proper instructions to the jury pointing out the duplication, explaining that the jury is never required to impose death, and emphasizing that the death penalty may not be imposed unless the aggravating factors *qualitatively* outweigh any mitigating factors.[6] Since instructions will sufficiently safeguard DesAnges against the theoretical imbalance he perceives in the weighing process created by the duplication of the *mens rea* element of the crime by statutory factor § 848(n)(1), his challenge to the weighing process fails.

### F. Death Penalty as Cruel and Unusual Under All Circumstances

■ Finally, DesAnges' challenges § 848 on the grounds that the death penalty, under any and all circumstances, constitutes cruel and unusual punishment in violation of the Eighth Amendment and that 21 U.S.C. § 848(e)–(q) must be struck down as a whole because it is incapable of constitutional judicial construction. The Supreme Court rejected the first of these grounds in *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) and in the preceding discussion in Part I of this opinion, this court has rejected the second. The court will deny the motion.

### II. Defendant's Motion to Dismiss the Indictment or Order Discovery Concerning Selective Prosecution

■ DesAnges has moved to dismiss the indictment based on selective prosecution or in the alternative for discovery on the issue. He maintains that the government is prosecuting him and seeking the death penalty because he is black. He would have the court conclude that the government's decisions are racially motivated because: (1) there is, in his opinion, no significant federal interest in prosecuting him; (2) the decision to prosecute him in federal court diluted (from 7.5% in Clarke County to 4.0% in the Harrisonburg Division of the Western District) the pool of eligible black jurors; (3) 66% of the defendants against whom the death penalty has been sought are black; and (4) most defendants prosecuted for crack cocaine are black. The government maintains that it is prosecuting DesAnges because he committed murder in the course of a federal offense. The court finds no evidence that the government is prosecuting DesAnges or seeking the death penalty on account of DesAnges' race. Consequently, the court denies DesAnges' motion.

■ Prosecutors may not selectively enforce criminal statutes based on race, religion, national origin, or any other arbitrary classification. *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668–69, 54 L.Ed.2d 604 (1978). The law, however, presumes in the absence of "exceptionally clear proof" that the prosecutor has not abused his wide discretion—discretion that is "essential to the criminal justice process." *McCleskey v. Kemp,* 481 U.S. 279, 297, 107 S.Ct. 1756, 1769–70, 95 L.Ed.2d 262 (1987). And it is not sufficient to prove discriminatory effect alone. Rather, the defendant must prove discriminatory purpose—that the prosecution has taken action "because of, not merely in spite of, its adverse effects upon an identifiable group." *Hernandez v. New York,* 500 U.S. 352, 360, 111 S.Ct. 1859, 1866–67, 114

---

6. Although proper instructions can cure any perceived imbalance in the weighing process as described above, the government may not identify non-statutory aggravating factors that duplicate statutory aggravating factors or submit substantially identical statutory aggravating factors to the penalty jury as this could impermissibly skew the weighing process. *See United States v. McCullah,* 76 F.3d 1087, 1110–12 (10th Cir. 1996) (finding impermissible the submission to the penalty jury of both statutory aggravating factors § 848(n)(1)(C) and § 848(n)(1)(D)).

L.Ed.2d 395 (1991) (citation and internal quotations omitted). DesAnges must prove that race motivated the prosecutor's decision. *United States v. Smith,* 30 F.3d 568, 572 (4th Cir.1994).

The *United States Attorneys' Manual* contains non-binding guidelines for federal prosecutors to follow in determining whether to seek the death penalty. DesAnges maintains that there is "no significant federal interest" in prosecuting him, a guideline prescribed by the *Manual,* and that the deviation from the *Manual* is evidence of discrimination. The court disagrees. Congress defined the federal interest when it proscribed the conduct and made it punishable by death. Whether that interest is less than Virginia's interest in prosecuting DesAnges is a matter of opinion, and the government expressed its opinion when it charged DesAnges.

DesAnges also points to the effect federal prosecution has on the racial make-up of the jury pool. According to DesAnges, 7.53% of Clarke County is black as compared to 4.02% of the Harrisonburg Division of the Western District, from which the jurors now will be selected. Those statistics, however, prove nothing, and they miss the mark of disproving the government's racially-neutral assertion that it is prosecuting DesAnges because he murdered Datcher.

Next, DesAnges seeks to have the court infer a discriminatory purpose from the fact that 66% of defendants against whom the Attorney General has sought the death penalty are black. He has no evidence, however, that the racial composition of death penalty prosecutions authorized is not reflective of the racial composition of capital defendants apprehended. More fundamentally, raw numbers fail to prove that the Attorney General's decision to seek the death penalty against DesAnges was racially motivated. *See United States v. Walker,* 910 F.Supp. 837, 859 (N.D.N.Y.1995).

Finally, DesAnges attempts to buttress his claim of selective prosecution with the allegation that the vast majority of individuals prosecuted for crack cocaine offenses are black. Although he has marshalled no evidence to support this contention, the court assumes from its own observations that the majority of those prosecuted for crack cocaine related offenses are indeed black as DesAnges alleges. Once again, however, DesAnges points to effects rather than motivation. That crack cocaine has most heavily impacted blacks has become clear. But there is no evidence to support DesAnges allegation that the government is prosecuting him *because* he is black.

■ In an effort to prove that the government is prosecuting him because of his race, DesAnges requests broad discovery of Department of Justice records. A request for discovery regarding selective prosecution requires a defendant to produce some evidence based on specific facts tending to show both discriminatory application of a law and discriminatory intent by the prosecution. *See United States v. Bourgeois,* 964 F.2d 935, 939 (9th Cir.1992); *United States v. Heidecke,* 900 F.2d 1155, 1159 (7th Cir.1990). Because DesAnges' has done neither, his motion for further discovery will be denied.[7]

### III. Government's Motion in Limine

■ The United States requests that the court admit an out-of-court statement made by the murder victim, Sanford Datcher, as an exception to the hearsay rule. DesAnges concedes that the statement is a present sense impression—an exception to the hearsay rule—but argues that the statement's prejudicial effect substantially outweighs its probative value. The court finds the statement admissible.

According to the United States, on December 23, 1994, Sanford Datcher was murdered

---

**7.** The Ninth Circuit Court of Appeals held, in *United States v. Armstrong,* 48 F.3d 1508 (9th Cir.), *cert. granted,* —— U.S. ——, 116 S.Ct. 377, 133 L.Ed.2d 301 (1995), that a statistical disparity alone, without any evidence regarding similarly situated persons, was sufficient to establish a colorable claim of selective prosecution so as to warrant discovery. *Id.* at 1513–14. The Su-

preme Court granted certiorari to review *United States v. Armstrong* on October 30, 1995, and oral argument was held on February 26, 1996. The Fourth Circuit, however, has found that evidence that similarly situated persons were not prosecuted is crucial to a selective prosecution claim. *See United States v. Greenwood,* 796 F.2d 49, 52 (4th Cir.1986).

as he sat in the driver's seat of his car parked in a rural area of Clarke County, Virginia. Datcher had parked his car approximately 100 feet down the road from a farm house located near a pasture. Roughly five minutes before the murder, Irving Porter, a farmer, was driving away from the pasture and noticed a man wearing a ski mask near Datcher's car. Porter maintains that the masked man fits the general description of DesAnges. As Porter drove by the farm house, he stopped his car and called to Datcher, who was standing in the front yard of the farm house, and asked Datcher "who was that guy walking down the road with the mask on?" Datcher, who was purportedly well-acquainted with DesAnges and now standing next to the passenger window of Porter's car, turned, looked down the road, and answered, "Omar." Within five minutes of this conversation Datcher was murdered as he and his girlfriend sat in Datcher's car.

■■■ DesAnges concedes that Datcher's statement qualifies as an exception to the hearsay rule,[8] yet maintains that Datcher's statement should be excluded because the probative value of Datcher's statement is substantially outweighed by the danger of unfair prejudice. The court disagrees. Although Datcher's statement qualifies as an exception to the hearsay rule, the court may nevertheless exclude it if its probative value is "substantially outweighed by the danger of unfair prejudice." FED.R.EVID. 403. The exclusion of relevant evidence under Rule 403 is a discretionary call.

■■■ Evidence that tends to inflame the jury or lead to decisions based on emotion carries a greater danger of unfair prejudice. Simply because evidence is harmful to one party's position does not make it "prejudicial" under the rule, however. *Ballou v. Henri Studios,* 656 F.2d 1147 (5th Cir.1981). In this case, Datcher's statement is highly probative of the identity of his assailant, and DesAnges has failed to articulate any reason why admission of this evidence would unfairly or improperly influence the jury. Thus, the government's motion will be granted.[9]

## IV. Conclusion

Based on the foregoing, the court hereby denies DesAnges' motions to declare 21

---

**8.** Federal Rule of Evidence 803(1) allows the admission of a hearsay statement if the statement is "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." FED.R.EVID. 803(1). Underlying Rule 803(1) is the assumption that statements of perception substantially contemporaneous with an event are highly trustworthy because (1) as the statement is simultaneous with the event, there is no memory problem; (2) there is little or no time for calculated misstatement; and (3) the statement is usually made to one who has equal opportunity to observe and check misstatements. *See* 4 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S EVIDENCE ¶ 803(1)[01], 803–89–90. The United States must satisfy three requirements before this exception is applied, however. First, the statement must be made while the event or condition is being perceived by the declarant or "immediately thereafter." *See United States v. Hinton,* 719 F.2d 711 (4th Cir.1983). Second, the declarant must have personally perceived the event. *See United States v. Delaplane,* 778 F.2d 570 (10th Cir.1985). And third, the declaration must be an explanation or description rather than a narration. *See United States v. Earley,* 657 F.2d 195 (8th Cir.1981).

Applying these principles to the case at bar, the court finds that the subject matter, perception, and time requirements are satisfied. The subject matter of Datcher's statement, the "event or condition" that he "describ[ed] or explain[ed]," was the masked man walking down the road. A man walking down a road with a mask over his head is an "event," and in this case, in speaking to Porter, Datcher was describing the event of the masked man walking down the road. Also, that Datcher "perceiv[ed]" the event is not disputed. Porter saw Datcher look down the road and, in response to Porter's question, indicated that the masked man was "Omar." Finally, Datcher's statement falls squarely within the time strictures of Rule 803(1), having occurred "immediately" after he looked down the road.

The United States also maintains that there is ample corroborating evidence that DesAnges was near the murder location at approximately the time of the murder. The court agrees. Three witnesses observed a man believed to be DesAnges to be at or near the farm house within minutes of Datcher's murder. In fact, Dawn Ford, a person purportedly well-acquainted with DesAnges and a passenger in the car with Datcher when he was killed, described the assailant as "wearing something black over his face and a black hood," having the same physical build as Omar DesAnges, and running "sleeky like Omar."

**9.** The court's ruling presupposes that the proffered evidence of the United States is accurate.

U.S.C. § 848 unconstitutional, dismiss the indictment, and order discovery concerning selective prosecution. Additionally, the government's motion in limine as to the admissibility of Datcher's statement is granted.

**IT IS SO ORDERED.**