UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 97-4821

LARRY ARNOLD JACKSON,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CR-97-57)

Submitted: February 24, 1998

Decided: June 19, 1998

Before WILKINS, NIEMEYER, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Brian K. Miller, BRIAN K. MILLER, P.C., Richmond, Virginia, for
Appellant. Helen F. Fahey, United States Attorney, S. David Schiller,
Assistant United States Attorney, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Larry Arnold Jackson pled guilty to one count of possession of cocaine with intent to distribute and one count of carrying a firearm during and in relation to a drug trafficking crime. He appeals the denial of his motion to suppress drugs and a firearm recovered from his person during an encounter with interdiction officers at Richmond's train station. We affirm.

Not all police-citizen encounters amount to seizures within the meaning of the Fourth Amendment. See Florida v. Bostick, 501 U.S. 429, 433-34 (1991). A seizure of the person takes place only when the officer, by means of physical force or a show of authority restrains the liberty of a citizen in such a way that a reasonable person would believe he was not free to terminate the encounter, and the person submits to the show of authority. See California v. Hodari D., 499 U.S. 621, 626 (1991). Even when officers have no basis for suspecting a particular individual, they may generally ask questions of that person, ask to examine his or her identification, and request consent to search his or her luggage--as long as the police officers do not convey a message that compliance with their requests is required. See Bostick, 501 U.S. at 434-35.

Jackson first contends that he was illegally seized in his encounter with detectives at the train station. The record discloses that Detective Armstead approached Jackson and his companion as they headed toward the parking lot of the train station and identified himself, displaying his badge. He explained that his job was to stop the flow of illegal narcotics into the Richmond area and asked for their cooperation. When both men indicated they would cooperate, Armstead asked to see their train tickets and identification. Armstead specifically told them that they were not under arrest or detention. He then asked them if they had any illegal narcotics, and both denied having any drugs. Armstead then asked to search their persons and Jackson's bag. Jackson said that Armstead could search his bag. Armstead noticed that Jackson's hands began to shake. After securing Jackson's permission to let his partner search the bag, Armstead asked Jackson again if he

2

could search his person. Jackson's hands began shaking again, and he responded, "yeah" with a trembling voice.

As Armstead began the patdown, Jackson asked him if he wanted to search his bag. Armstead responded that Jackson had already given consent to search his bag. Jackson did not respond and began emptying his pockets, stating that he did not have anything in his pockets. Armstead told him that there was no need to empty his pockets and that he could just pat him down. Jackson then stepped towards Armstead with his arms outstretched from his sides. Armstead told him to put his arms down and then conducted a patdown. He felt a long, irregularly-shaped object. Armstead informed Jackson that he felt something he believed to be hidden drugs, and told him he was now under detention. Armstead then recovered a lumpy oval object wrapped in plastic that later proved to be cocaine. He continued the patdown and felt the hand grip of what appeared to be a weapon. After recovering a Glock 9mm gun, Armstead placed Jackson under arrest for carrying a concealed weapon.

We find that Jackson's encounter with Armstead was entirely consensual and thus did not amount to a seizure within the meaning of the Fourth Amendment. Armstead approached Jackson in a public place, identified himself, explained the purpose of the encounter, and informed Jackson that he was not detained or under arrest. Under these circumstances, we find that a reasonable person would believe he was free to terminate the encounter.

Jackson next contends that the district court erred in concluding that he consented to a search of his person. To determine whether Jackson voluntarily consented to the search, we must examine the totality of the circumstances. See United States v. Rusher, 966 F.2d 868, 877 (4th Cir. 1992). Although such consent must be voluntary, it is not necessary that Jackson knew he had the right to refuse consent. See Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1973). We consider the circumstances surrounding the encounter, including the conduct of police, in determining whether consent to search was voluntary. See United States v. Bueno, 21 F.3d 120, 126-27 (6th Cir. 1994). Another relevant factor is the extent to which Jackson cooperated with the police. See United States v. Smith , 30 F.3d 568, 571 (4th Cir. 1994).

3

We find Jackson voluntarily consented to the search of his person. Jackson cooperated fully during the encounter and responded affirmatively to Armstead's requests to search his bag. In addition, Armstead made it clear to Jackson that he was not under arrest or detention. Finally, we conclude that Jackson effectively conveyed his consent to a patdown of his person when he stepped towards Armstead with his arms raised from his sides in response to Armstead's request.

Accordingly, we find the district court properly denied Jackson's motion to suppress and affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

4