**UNITED STATES of America,
Plaintiff,**

v.

**Samuel James WYATT, Defendant.**

**No. CRIM.5:02–00027.**

United States District Court,
S.D. West Virginia,
Beckley Division.

May 16, 2002.

John L. File, Assistant United States Attorney, Charleston, WV, for the Government.

George H. Lancaster, Jr., Assistant Federal Public Defender, Charleston, WV, for defendant

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

On May 2, 2002 the Court heard evidence on Defendant's motion to suppress. As set forth below, the Court DENIES the motion.

## I. FACTUAL BACKGROUND

On October 12, 2001 Defendant was traveling north on Interstate 77 in a fairly remote, wooded area when Sgt. S.B. Lake of the West Virginia State Police, while working alone, stopped Defendant for speeding. The width of the berm where the stop occurred was a normal size (*i.e.* there was little room for pedestrians to maneuver around vehicles) and Sgt. Lake approached Defendant's car on its passenger side. He then requested Defendant's license and registration and instructed Defendant to exit his vehicle and enter Lake's cruiser.

As the two approached the cruiser, Sgt. Lake stopped, stepped closer to Defendant (standing approximately 12 to 16 inches from Defendant), and asked if Defendant had any guns or knives on him. Sgt. Lake testified he routinely inquires about guns and knives as an officer safety precaution because, in the past, he has had occasion to place armed and/or wanted individuals in his cruiser, some of whom were wanted for serious crimes, including murder. Based on past experience, Sgt. Lake testified he always asks about weapons before placing someone in his cruiser.

Immediately after Sgt. Lake inquired about guns or knives, and prior to Sgt. Lake actually touching Defendant, Defendant pulled out two knives from his pocket and displayed them to Lake. Sgt. Lake then instructed Defendant to put the knives on Defendant's vehicle. Defendant placed the knives inside the vehicle through the driver's window. According to Sgt. Lake, Defendant's failure to follow his instructions as to where to place the knives concerned Lake, causing him to wonder if Defendant placed additional items in his vehicle at the same time.

As Defendant returned to the police cruiser, Sgt. Lake asked Defendant if he had any other weapons on his person. Defendant indicated that he did not and raised his hands for Sgt. Lake to check. Sgt. Lake testified that he interpreted Defendant's actions, in raising his hand, as giving Sgt. Lake consent to search Defendant. Sgt. Lake did not advise Defendant whether he had the right to refuse a search.

Before patting Defendant's pockets, Sgt. Lake testified that he could visually observe additional items in Defendant's front pockets. Sgt. Lake then asked "what's all that right there?", began to pat the outside of Defendant's pockets, and felt hard objects therein. Sgt. Lake testified he could not specifically discern whether the objects were weapons and believed the objects potentially could be additional knives. As part of the pat-down search, Sgt. Lake pulled Defendant's right front pocket open but did not reach down inside and pull out the contents.

Sgt. Lake then told Defendant to "pull that stuff out" of his pockets. Defendant began removing items from his right front pocket, including a lighter, a third knife, fingernail clippers, and a tube of glue. At that point, Sgt. Lake determined Defendant was not truthful in answering questions about other potential weapons on his person. Sgt. Lake also testified it appeared Defendant did not pull everything from his pocket but instead, spent a fair amount of time feeling around for select items. Based on his experience, Sgt. Lake concluded it was probable there was something in Defendant's pocket he did not want the officer to see.

Defendant then pulled a marijuana pipe from his left front pocket and a package of rolling papers from one of his back pockets. When he saw the marijuana pipe and rolling papers, Sgt. Lake asked Defendant where his marijuana was. In response, Defendant produced a small amount of marijuana from his right front pocket. In Sgt. Lake's opinion, the amount of marijuana produced by Defendant was for personal use. Based on the fact Defendant had a quantity of marijuana on his person, Sgt. Lake testified he believed Defendant might have additional amounts in his vehicle and possibly could have a history of drug-related offenses.

Thereafter, Sgt. Lake advised Defendant to have a seat in the police cruiser. While sitting in the cruiser, Sgt. Lake asked Defendant about his criminal history. Defendant responded he had been arrested for driving on a suspended license and had a conviction for marijuana possession. Sgt. Lake then initiated a criminal background check on Defendant, which revealed Defendant had several felony convictions and multiple drug-related arrests. Based on this information, Sgt. Lake testified he had an additional basis to believe Defendant might have other quantities of controlled substances in his vehicle.

Sgt. Lake then questioned Defendant about the presence of other drugs in the vehicle. Initially, Defendant denied the possession of other drugs but later offered that a marijuana joint or roach was lying on his vehicle's console. At that juncture, Sgt. Lake called Tpr. J.A. Laing to bring a drug dog to the scene.

When Tpr. Laing arrived with his drug dog, Sgt. Lake explained to Laing he had found a personal use amount on the Defendant, that the Defendant had prior drug arrests and convictions, and had admitted that an additional amount of marijuana was present in the vehicle. Tpr. Laing then employed the dog to search the exterior of the vehicle. The dog went around the vehicle, jumped up on the driver's side door, and then went through the open window on the driver's side. The dog then signaled the presence of drugs in two areas—in the floorboard and the console area.

Sgt. Lake then began a hand search of the vehicle. When he opened the center console, Sgt. Lake observed in plain view a revolver in a small holster. Later, Sgt. Lake found approximately 56 grams of marijuana in his police cruiser after Defendant left the cruiser.

Sgt. Lake's stop of Defendant was captured on film, together with audio, by a video camera mounted in Sgt. Lake's vehicle. The portion of the video relating to the initial stop, Defendant's production of the knives, and the subsequent search of Defendant's person was viewed by the Court at the end of Sgt. Lake's testimony on direct examination. Sgt. Lake's version of the events comport with the events depicted on the tape.

## II. DISCUSSION

Based on Defendant's possession of the firearm, Defendant was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Defendant moved to suppress the firearm, arguing Sgt. Lake's pat-down search was illegal. First, Defendant contends Sgt. Lake could not conduct a pat-down search without reasonable suspicion Defendant was armed or that criminal activity was afoot. Further, Defendant claims Sgt. Lake may not manipulate Defendant's presence—*i.e.* direct Defendant to sit in the police car—in the name of officer safety so as to insure his ability to conduct a pat-down search. Defendant also argues that knives are not so dangerous as to render a further pat-down reasonable.

### A. Search of Defendant's Person

■ First, it is undisputed Sgt. Lake lawfully stopped Defendant for speeding. *United States v. Hassan El,* 5 F.3d 726, 730 (4th Cir.1993) ("[W]hen an officer observes a traffic offense or other unlawful conduct, he or she is justified in stopping the vehicle under the Fourth Amendment."). Once Defendant was stopped, it was proper for Sgt. Lake to order Defendant out of his vehicle. *Ohio v. Robinette,* 519 U.S. 33, 38–39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) ("[O]nce a motor vehi-

cle has been lawfully detained for a traffic violation, the police may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.").

■ Sgt. Lake then lawfully instructed Defendant to accompany him to the police cruiser. *See United States v. Richards,* 967 F.2d 1189, 1193 (8th Cir.1992). This was proper, especially in light of the fact that Sgt. Lake was working alone in a remote area and the vehicles were parked on the narrow berm of a busy interstate highway.

[3] Next, in furtherance of officer safety, Sgt. Lake justifiably inquired as to the presence of guns, knives, and weapons on Defendant's person before placing Defendant in his cruiser. *See United States v. Holt,* 264 F.3d 1215 (10th Cir.2001) (per curiam) (Officer may lawfully ask about loaded weapons in the name of officer safety.). Again, this question was reasonable because Sgt. Lake was working alone in a remote area.

In response to Sgt. Lake's question about weapons, Defendant reached into his right front pocket and voluntarily produced two knives. Based on a review of the tape, the Court does not perceive Defendant to have been intimidated into producing these weapons. Sgt. Lake is not a large man and he was alone. Moreover, Sgt. Lake did not approach Defendant aggressively but, rather, addressed him in a polite manner. In sum, the situation appeared calm and Defendant appeared to have produced the knives voluntarily.

■ After producing the knives, Defendant failed to follow Sgt. Lake's instructions and placed the knives inside his vehicle, thereby raising Lake's suspicions. Sgt. Lake then reasonably asked Defendant if he had any other weapons on his person. Defendant denied having any oth-

er weapons and raised his arms in the air, seemingly inviting Sgt. Lake to confirm Defendant's response. Sgt. Lake perceived these actions as a voluntarily consent to a pat-down search and the Court agrees. In determining whether consent was freely given, the Court considers:

> the characteristics of the accused (such as age, maturity, education, intelligence, and experience) as well as the conditions under which the consent to search was given (such as the officer's conduct; the number of police officers present; and the duration, location, and time of the encounter).

*United States v. Elie*, 111 F.3d 1135, 1144 (4th Cir.1997).

■ Here, Defendant is a 42 year-old man with a G.E.D. and one who has had significant experience with the criminal justice system. Sgt. Lake was the only officer present at the scene and as previously stated, he treated Defendant in a polite, respectful manner. Considering those facts in connection with Defendant's actions in lifting his hands in response to Lake's follow-up question regarding additional weapons, the Court **FINDS** Defendant voluntarily consented to the pat-down search. *See United States v. Smith*, 30 F.3d 568 (4th Cir.1994) (unlocking car door and appearing cooperative with police sufficient evidence of consent.) Importantly, Sgt. Lake was not required to advise Defendant he had a right to refuse consent. *Ohio v. Robinette*, 519 U.S. 33, 39–40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996). Further, Defendant was not entitled to *Miranda* warnings when questioned during the stop. *United States v. Sullivan*, 138 F.3d 126, 130–32 (4th Cir.1998.)

■ Even if Defendant had not voluntarily consented to a pat-down search, Sgt. Lake was justified in conducting a pat-down, *Terry* search without Defendant's consent. *Terry v. Ohio*, 392 U.S. 1, 88

S.Ct. 1868, 20 L.Ed.2d 889 (1968). Sgt. Lake visually observed additional items in Defendant's pockets. The additional items, coupled with Defendant's failure to follow orders regarding where to place the knives, gave Sgt. Lake a reasonable suspicion that Defendant might possess other weapons. Accordingly, Sgt. Lake lawfully initiated a pat-down search to check for additional weapons. *See Terry* at 30, 88 S.Ct. 1868.

■ Furthermore, Sgt. Lake did not violate Defendant's Fourth Amendment rights by opening Defendant's pocket. Sgt. Lake testified he felt a hard object in the pocket that could have been a weapon and therefore, the Court **FINDS** the officer took reasonable steps to determine what the object was. While an officer may not squeeze, slide or otherwise manipulate the contents of a defendant's pocket if the officer knows the pocket contains no weapon, *Minnesota v. Dickerson*, 508 U.S. 366, 378, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), this Court **CONCLUDES** the steps taken by Sgt. Lake to ascertain whether an object was a weapon by pulling open the outside pockets of clothing did not exceed the scope of a *Terry* frisk. *Cf. United States v. Swann*, 149 F.3d 271 (4th Cir.1998) (seizure of a stack of stolen credit cards from defendant's sock was upheld because a reasonable officer well could have believed that the item was a weapon, specifically a box cutter with a sharp blade).

### B. Search of the Vehicle

As stated above, the pat-down search led to the production of a small amount of marijuana, another weapon, information concerning Defendant's criminal history, which included felony convictions and several drug-related arrests, and an admission that at least a marijuana roach was

present in the vehicle. Based on this information, a drug dog was called to the scene. It sniffed at the outside of the car, and jumped up on the driver's side door. *United States v. Jeffus*, 22 F.3d 554, 556–57 (4th Cir.1994) (citing *United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) ("Having the trained dog sniff the perimeter of [defendant's] vehicle, which had been lawfully stopped in a public place, did not of itself constitute a search.")). The dog then went inside the vehicle through an open driver's side window and specifically alerted to the presence of contraband in two locations, the floorboard and the console.

■■■ After the dog alerted inside the car, Sgt. Lake commenced a warrantless hand search of the inside of the vehicle. Although the drug dog alerts provided an independent, probable cause to search a vehicle, *Jeffus*, 22 F.3d at 557, the discovery of the drugs on Defendant's person, coupled with his criminal history and admission that an additional amount of marijuana was present in the vehicle, also provided Sgt. Lake with probable cause to conduct a warrantless search of the vehicle under the automobile exception.[1] See *United States v. Gastiaburo*, 16 F.3d 582, 586 (4th Cir.1994) (citing *California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991) ("The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained therein.")). Thus, the warrantless search of the vehicle, including the console, was lawful under the automobile exception.

Once the console was lawfully opened, Sgt. Lake readily observed the handgun and, knowing Defendant had prior felony convictions, properly seized the item. For all the foregoing reasons, the motion to suppress is **DENIED.**

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record and publish the same on the Court's website at www.wvsd.uscourts.gov.

---

1. Defendant did not assert Sgt. Lake lacked probable cause to search the vehicle. Rather, Defendant challenged the initial pat-down search that revealed the marijuana in the first instance and argued the gun should be suppressed as fruit of the poisonous tree.